EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Toro Rivera y Raymond Martínez Lozano<br>**Recurridos**<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, representado por el Secretario de Justicia, Departamento de Corrección, representado por su Secretario, Fiscales Melvin Colón Bonet y Marie Díaz León, Agente Listoriel López, Agente Aldo Flores Alicea, Agente Otoniel González, Agente Excer Quiñones, Agente John Doe, Agente Richard Doe y Compañías Aseguradoras A, B, C<br>**Peticionarios** | Certiorari<br><br>2015 TSPR 172<br><br>194 DPR ____ |

Número del Caso: CC-2014-245

Fecha: 23 de diciembre de 2015

Tribunal de Apelaciones:

      Región Judicial de Ponce

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

      Lcda. Tanaira Padilla
      Subprocuradora General

      Lcda. Rosa Elena Pérez Agosto
      Procuradora General Auxiliar

Abogados de la Parte Recurrida:

      Lcdo. Armando Pietri Torres
      Lcda. Wanda Marín Lugo

Materia: Daños y Perjuicios – Ley de Pleitos contra el Estado: momento en que comienza a transcurrir término de 90 días para notificar al Estado en demanda por persecución maliciosa; conducta intencional v. conducta negligente; persecución maliciosa; justa causa para incumplir con requisito de notificación. (término estricto cumplimiento)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ángel Toro Rivera y Raymond Martínez Lozano<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, representado por el Secretario de Justicia, Departamento de Corrección, representado por su Secretario, Fiscales Melvin Colón Bonet y Marie Díaz León, Agente Listoriel López, Agente Aldo Flores Alicea, Agente Otoniel González, Agente Excer Quiñones, Agente John Doe, Agente Richard Doe y Compañías Aseguradoras A, B, C<br><br>Peticionarios | **Núm.** CC-2014-0245 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 23 de diciembre de 2015.

Se nos presenta la siguiente interrogante: ¿Cuándo comienza a discurrir el término de 90 días para notificar al Estado de la intención de demandarle por daños ocasionados por conducta negligente de funcionarios gubernamentales asociada a una causa de acción por persecución maliciosa? Para poder precisarlo es pertinente conocer en qué momento se configura la acción denominada persecución maliciosa. Luego de examinar los eventos procesales en controversia, así como el derecho aplicable, determinamos que el término

de 90 días para notificar al Estado de la intención de instar una reclamación de este tipo, según dictamina el Artículo 2A de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como la Ley de Pleitos contra el Estado, comienza a transcurrir desde que el tribunal pronuncia su fallo absolutorio. Art. 2A, 32 LPRA sec. 3077a (2004) (Artículo 2A de la Ley de Pleitos contra el Estado o Ley Núm. 104). Veamos.

## I

Los Sres. Raymond Martínez Lozano y Ángel Toro Rivera (Recurridos o señores Martínez y Toro) presentaron una Demanda en daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Ponce, contra el Gobierno de Puerto Rico (Gobierno o Peticionario), el Departamento de Corrección y Rehabilitación, los fiscales de la División de Integridad Pública Melvin Colón Bonet y Marie Díaz León (Fiscales), los agentes Listoriel López López, Aldo Flores Alicea, Otoniel González, Ecxer Quiñones, John Doe y Richard Doe (Agentes), así como contra las Compañías Aseguradoras A, B y C. Las alegaciones de los Recurridos, exfuncionarios del Departamento de Corrección y Rehabilitación, están basadas en un proceso penal iniciado el **16 de marzo de 2009** a través del cual el Ministerio Público presentó cargos criminales contra ambos por violaciones al Código Penal de Puerto Rico de 2004, 33 LPRA sec. 4629 *et seq.* (Derogado), así como a la Ley de Ética Gubernamental de 1985, 3 LPRA ant. sec. 1801 *et seq.*

(Derogada).[1]  Al mismo tiempo, se le imputaron al señor Martínez violaciones a la Ley de Sustancias Controladas. 24 LPRA sec. 2101 *et seq*. (2011).

Tras celebrarse el juicio en su fondo por tribunal de derecho, el **24 de octubre de 2011** el juez de instancia **emitió un fallo en corte abierta de *No Culpabilidad*** a favor de los señores Martínez y Toro por las alegadas infracciones a la Ley de Ética Gubernamental.[2] Igualmente, encontró ***No Culpable*** al señor Martínez de violación al Artículo 262 del Código Penal de 2004 y al señor Toro de violación al Artículo 283 del mismo cuerpo normativo. 33 LPRA secs. 4890 y 4911, respectivamente (Derogados). A petición de los Fiscales, el tribunal archivó los cargos en contra del señor Martínez por las infracciones a la Ley de Sustancias Controladas, *supra*, y al Artículo 283 del Código Penal de 2004, *supra*, conforme lo admite la Regla 247(a) de

---

[1]  El Ministerio Público imputó al señor Toro haber infringido los Arts. 262 (Soborno) y 283 (Introducción de Objetos a un Establecimiento Penal) del Código Penal de 2004, 33 LPRA secs. 4890 y 4911 (Derogados), respectivamente, así como el Art. 3.2(c) de la Ley de Ética Gubernamental de 1985, 3 LPRA sec. 1822 (Derogada), por supuestamente introducir un teléfono celular y un cargador eléctrico a la Institución Penal de Ponce Principal y recibir $300.00 a cambio, mientras fungía como oficial del Departamento de Corrección y Rehabilitación.

De otro lado, los Fiscales presentaron cargos contra el señor Martínez por violar los Arts. 403(b) y 406 de la Ley de Sustancias Controladas de 2007, 24 LPRA secs. 2403 y 2406, respectivamente, los Arts. 262 (Soborno) y 283 (Introducción de Objetos a un Establecimiento Penal) del Código Penal de 2004, *supra*, y el Art. 3.2(c) de la Ley de Ética Gubernamental de 1985, *supra*. El Ministerio Público adujo que el señor Martínez, siendo funcionario del Departamento de Corrección y Rehabilitación, a cambio de $800.00 introdujo sustancias controladas a la Institución Penal Ponce Principal, con la intención de distribuirlas.

[2]  Específicamente, el foro de instancia halló *No Culpable* al **señor Martínez** de violación a los Artículos 302(C) de la Ley de Ética Gubernamental y al Artículo 262 del Código Penal de 2004, *supra*. Asimismo, encontró al **señor Toro** *No Culpable* de violación al Artículo 3.2(c) de la Ley de Ética Gubernamental, *supra*, y al Artículo 283 del Código Penal de 2004, *supra*. La Demanda nada dispone sobre la violación al Artículo 262 del Código Penal del 2004, *supra*, imputada al señor Toro.

las Reglas de Procedimiento Criminal de Puerto Rico, 34 LPRA Ap. II, R. 247(a) (2004). El tribunal de instancia **notificó su pronunciamiento por escrito el 6 de diciembre de 2011**, archivándose en autos la sentencia correspondiente ese mismo día.

Así las cosas, mediante carta de fecha **1 de febrero de 2012** los Recurridos notificaron, tanto al Secretario de Justicia como al Secretario de Corrección, su intención de demandar al Gobierno por los hechos antes relatados.[3]  El **23 de octubre de 2012** instaron la acción civil en cuestión reclamando daños.

Adujeron que los Fiscales fueron negligentes en el descargo de sus funciones. Sostuvieron, además, que: la investigación realizada por los Agentes demandados fue deficiente; los testigos desconocían los hechos básicos, además de que el caso fue fabricado. Esto provocó que a los recurridos se les imputaran cargos, a pesar de que los peticionarios no contaban con evidencia para probar todos los elementos de los delitos y procesarlos criminalmente. Alegaron, asimismo, que el Gobierno, a través de su Secretario de Justicia y el Departamento de Corrección y Rehabilitación, respondía por las actuaciones de sus empleados, quienes le imputaron la comisión de delitos e

---

[3]    En el expediente de este caso no surge con claridad la fecha en que los Recurridos notificaron formalmente al Estado su intención de demandar.  Aunque las alegaciones y documentos señalan que éstos realizaron el trámite pertinente el miércoles, 1 de febrero de 2012, en el recibo postal aparece la fecha del viernes, **3 de febrero de 2012.**  Además, en la Réplica a la solicitud de reconsideración, los Recurridos admiten haber cursado la notificación al Secretario de Justicia el **3 de febrero de 2012**, la cual fue recibida tres días más tarde.  Ap., pág. 58.

instaron un procedimiento penal en su contra, a sabiendas de que no incurrieron en dicha conducta. Los señores Martínez y Toro plantearon que a consecuencia de estos acontecimientos fueron separados de sus puestos, humillados y destruidos en el ámbito económico, emocional y familiar. Como resultado de la supuesta negligencia desplegada por el Peticionario y sus funcionarios, cada uno de los Recurridos solicitó una indemnización no menor de $300,000.00 por los daños sicológicos, las angustias mentales y las pérdidas económicas sufridas.

El **18 de marzo de 2013**, el Gobierno presentó una Moción de Desestimación mediante la cual advirtió que procedía desestimar con perjuicio la reclamación en su contra por estar prescrita.[4] Del mismo modo, argumentó que los señores Martínez y Toro incumplieron con el requisito de notificación oportuna al Secretario de Justicia, tal y como lo exige el Artículo 2A de la Ley de Pleitos contra el Estado. Concluyó que la referida conducta repercutió negativamente en la preparación de su defensa de dicha reclamación.

En su oposición a la solicitud de desestimación, los Recurridos plantearon que la acción estaba en tiempo, ya que, según éstos, el término para notificar al Estado e instar la acción civil en daños comenzó a transcurrir a

---

[4] El Peticionario alegó que la causa de acción de los señores Martínez y Toro estaba prescrita, ya que el término para demandar había comenzado a transcurrir desde el 16 de marzo de 2009, fecha en que inició el proceso penal en contra de los Recurridos. Ap., pág. 103. No obstante, retiró este planteamiento a nivel apelativo. Petición de *Certiorari*, pág. 4, esc. 6.

partir de la notificación del fallo de no culpabilidad, fecha en que advirtieron el daño. Alegaron, además, que el Peticionario ha tenido conocimiento y control de la prueba del caso, lo que les exime de tener que notificar dentro del plazo legal de 90 días. Atendida la posición de ambas partes, el **2 de mayo de 2013** el tribunal de instancia denegó la petición de desestimación.

El Gobierno solicitó la reconsideración oportuna del dictamen, reiterando los argumentos originales. Planteó, en la alternativa, que el término para notificar al Secretario de Justicia comenzó a decursar desde el fallo en corte abierta y no de la notificación escrita del mismo. Destacó que el proceso criminal contra los Recurridos no tuvo el efecto de relevarlos de su deber de notificar formalmente al Estado de su intención de demandarlo dentro del tiempo fijado en ley. Permitir lo contrario, concluyó, dejaría al Gobierno en desventaja e indefensión. Los señores Martínez y Toro objetaron el supuesto estado de indefensión del Gobierno, debido a que la información relacionada al pleito, según propusieron, estaba a cargo de sus propios funcionarios.

Mediante Resolución del **30 de octubre de 2013**, el foro de instancia acogió la postura de los Recurridos. Insatisfecho con la referida determinación, el Peticionario interpuso un *recurso de certiorari* ante el Tribunal de Apelaciones señalando que el foro de instancia erró al concluir que los Recurridos cumplieron con el requisito de

notificación a tenor con el Artículo 2A de la Ley Núm. 104. El foro apelativo intermedio denegó el recurso solicitado amparado en los criterios dispuestos en la Regla 40 de su Reglamento, 4 LPRA Ap. XXII-B, R. 40 (2012). No obstante, encontró que los señores Martínez y Toro notificaron oportunamente al Secretario de Justicia su intención de demandar. A base de ello, indicó que su intervención resultaba innecesaria en esa etapa procesal del caso porque la determinación recurrida no constituía abuso de discreción o error en la aplicación de la norma procesal. Cónsono con lo anterior, devolvió el caso al tribunal de instancia para que continuaran los procedimientos de rigor.

A raíz de esta determinación, el Gobierno acudió ante nos, señalando que el **Tribunal de Apelaciones erró al determinar que los Recurridos notificaron a tiempo al Secretario de Justicia de su intención de demandar al Estado.**

Expedido el auto de *certiorari* el **31 de octubre de 2014** y contando con las respectivas comparecencias de las partes, procedemos a resolver.

## II

Antes de iniciar la discusión del derecho aplicable es meritorio aclarar que al amparo de nuestro ordenamiento vigente, como veremos, el Gobierno no responde por los daños causados por sus agentes o funcionarios al instar con malicia y sin causa probable un proceso criminal contra un sujeto. No obstante, si como sucede en este caso, existen

alegaciones de actos u omisiones negligentes por parte de funcionarios públicos, sí está expuesto a responder por los daños ocasionados, aunque éstos estén asociados de alguna manera a la conducta intencional constitutiva de persecución maliciosa. La referida distinción es importante a los efectos de eludir la inmunidad soberana y sienta las bases que permiten establecer a partir de qué momento se configura esta otra causa de acción, y por ende, surge la obligación de los agraviados de notificar al Gobierno su intención de demandarle.

Por último, advertimos que nuestro análisis se ceñirá al aspecto estrictamente procesal del caso según planteado como error ante este Tribunal,[5] sin adentrarnos a evaluar los méritos de la reclamación basada en **negligencia** traída en contra del Estado y de varios funcionarios públicos por eventos ligados al proceso penal deliberado.[6]

---

[5]      El Gobierno planteó como segundo error, lo siguiente:

> Erró el Tribunal de Apelaciones al determinar que la parte demandante notificó oportunamente al Secretario de Justicia de su intención de demandar al ELA. Petición de *Certiorari*, pág. 6.

[6]      Cabe destacar que, aunque no lo señala como error, el Gobierno en su Alegato discute y cuestiona ante este Foro la suficiencia de las alegaciones de negligencia por parte de los Recurridos. No obstante, es norma asentada en la práctica apelativa que todo recurso tiene que **señalar, discutir y fundamentar los errores** atribuidos al foro apelado o recurrido, a los efectos de colocar al foro revisor en posición de evaluar y atender adecuadamente los asuntos que le son planteados. Ortiz v. Holsum, 190 DPR 511 (2014). Los tribunales revisores deben circunscribir su labor a atender solo los errores que se le presentan en un recurso apelativo. Por lo tanto, el error **omitido o no discutido** se tendrá como no puesto. Morán v. Martí, 165 DPR 356 (2005).

De otro lado, el Peticionario cuestiona por primera vez ante nosotros estas alegaciones de negligencia en el trámite judicial. Sin embargo, como es bien sabido, nuestro derecho es rogado. Por tal razón, los foros apelativos están impedidos de resolver planteamientos ajenos, que no fueron presentados ante los tribunales inferiores, a menos que ello evite una injusticia manifiesta. Ortiz v. Holsum, *supra*; E.L.A. v. Northwestern Selecta, 185 DPR 40 (2012). En este caso, estamos imposibilitados de resolver en primera instancia

## A. Ley de Pleitos Contra el Estado

En Puerto Rico rige la doctrina de inmunidad del Estado o inmunidad soberana desde que el Tribunal Supremo de los Estados Unidos la incorporó a nuestro ordenamiento por mandato judicial en People of Porto Rico v. Rosaly y Castillo, 227 US 270 (1913). Véanse, Rosario Mercado v. ELA, 189 DPR 561 (2013); Guardiola Álvarez v. Depto. de la Familia, 175 DPR 668 (2009). Esta doctrina sirve de fundamento legal para impedir procesos judiciales contra el Estado, sin su consentimiento. Guardiola Álvarez v. Depto. de la Familia, supra; Defendini Collazo et al. v. E.L.A., Cotto, 134 DPR 28 (1993).

No obstante, la adopción de este principio propició que el poder legislativo promulgara una serie de medidas a fin de prescribir los contextos en los que admitiría imponerle responsabilidad torticera al Estado. Guardiola Álvarez v. Depto. de la Familia, supra; Berríos Román v. E.L.A., 171 DPR 549 (2007). La última de éstas es la Ley Núm. 104 de 29 de junio de 1955, 32 LPRA sec. 3077 et seq. (2004), conocida como Ley de Pleitos contra el Estado, la cual **constituye una renuncia del soberano a su inmunidad que, aunque amplia, no representa una autorización ilimitada en contra de la protección que le asiste.** Doble

asuntos no presentados ante el Tribunal de Apelaciones. Ortiz v. Holsum, supra.

Circunscribimos nuestra faena revisora a considerar únicamente el segundo error alegado en la Petición de Certiorari por parte del Gobierno. A los efectos de atender el error señalado, asumimos, según surge de ciertas alegaciones de la Demanda, que los Recurridos pudieron haber tenido una causa de acción por negligencia vinculada a los alegados actos intencionales de persecución maliciosa, sin entrar a juzgar en esta etapa los méritos de las alegaciones como pretendió el Peticionario.

Seis Sport v. Depto. Hacienda, 190 DPR 763 (2014); Guardiola Álvarez v. Depto. de la Familia, *supra*; Berríos Román v. E.L.A., *supra*. La Ley Núm. 104 es, más bien, una renuncia parcial del Estado a su inmunidad, que dispone las circunstancias específicas bajo las cuales éste consintió a ser demandado. Íd. Entre éstas, la ley impuso responsabilidad vicaria al Estado, autorizando las acciones judiciales en su contra por los daños ocasionados a la persona o a la propiedad, por los actos u omisiones culposas o negligentes de sus empleados, funcionarios o agentes en el descargo oficial de sus funciones. Art. 2(a), 32 LPRA sec. 3077 (2004 y Supl. 2014). Autorizó, además, las demandas basadas en la Constitución, leyes o reglamentos de Puerto Rico. Art. 2(c), 32 LPRA sec. 3077 (2004 y Supl. 2014).

La intención de la Ley de Pleitos contra el Estado es que el cuerpo político responda por las actuaciones u omisiones de sus agentes y empleados de la misma forma en que sería responsable un ciudadano particular, siempre y cuando el agraviado cumpla con las condiciones y salvaguardas procesales dispuestas en la medida. Doble Seis Sport v. Depto. Hacienda, *supra*; Zambrana Maldonado v. E.L.A., 129 DPR 740 (1992). Algunas de estas restricciones versan sobre el requisito de notificación al Secretario de Justicia; el tipo de acción para las cuales el Estado conserva su inmunidad; y el término prescriptivo aplicable a las reclamaciones. 32 LPRA secs. 3077a, 3081 y 3083

(2004). Aunque la legislación resulta en un beneficio dual, tanto para el perjudicado, como para el funcionario gubernamental, no podemos perder de perspectiva que la medida en cuestión se ajusta a la conveniencia propia del Estado. Doble Seis Sport v. Depto de Hacienda, *supra.* Por tal razón, merece una interpretación restrictiva a su favor. Íd.; Rosario Cartagena v. E.L.A., 101 DPR 620 (1973).

**1. Conducta Intencional v. Conducta Negligente 2**

El Artículo 6 de la Ley Núm. 104, contempla unas categorías de actos para las cuales el Estado no estuvo dispuesto a ceder su inmunidad. Art. 6, 32 LPRA sec. 3081 (2004). Específicamente, el inciso (d) de dicha disposición prohíbe demandar al cuerpo político para exigir el resarcimiento de daños por los actos u omisiones de un funcionario, agente o empleado que constituyan "acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, **persecución maliciosa**, calumnia, libelo, difamación y falsa representación e impostura". (Énfasis suplido). Art. 6(d), 32 LPRA sec. 3081(d) (2004). Véanse, además: Valle v. E.L.A., 157 DPR 1 (2002); Meléndez v. E.L.A., 81 DPR 824 (1960). En síntesis, el **Estado es llamado a responder como cualquier otra persona por los actos negligentes de sus empleados en su función oficial, pero reservó su inmunidad cuando dichos actos constituyen conductas intencionales o**

**delictivas.**[7]    Valle v. E.L.A., *supra*; Romero Arroyo v.
E.L.A., 127 DPR 724 (1991); Meléndez v. E.L.A., *supra*.

Aunque, como regla general, el cuerpo político solo
responde por los actos negligentes y descuidados de sus
empleados, este Tribunal se ha dado a la tarea de atemperar
dicha limitación con la intención propia de la medida
legislativa.  Galarza Soto v. E.L.A., 109 DPR 179 (1979).
A estos efectos, hemos resuelto que el Estado está sujeto a
responsabilidad en cualquiera de los siguientes supuestos:

(1) cuando el empleado, agente o funcionario causa un
daño por su exclusiva culpa o negligencia mientras
desempeña sus funciones y actúa en su capacidad
oficial;

(2) cuando el empleado, agente o funcionario causa un
daño mientras desempeña sus funciones y actúa en su
capacidad oficial por una actuación
preponderantemente negligente, aun cuando dicha
conducta tenga algunos elementos intencionales;

(3) cuando, a pesar de que el daño fue directamente
producido por un acto enteramente intencional de los
cuales no responde el Estado, hubo otros actos
negligentes separados de cocausantes del daño por los
cuales sí debe responder el Estado; y

(4) cuando el Estado a través de sus agentes es
negligente por omisión al incumplir con un deber
impuesto por las leyes y la Constitución. (Énfasis
suprimido y citas omitidas). Leyva *et al.* v. Aristud
*et al.,* 132 DPR 489, 510-511 (1993).

El hecho de que la conducta lesiva sea producto de
actos intencionales de los empleados o agentes estatales,
no es suficiente para admitir automáticamente la inmunidad
del soberano.  Leyva *et al.* v. Aristud *et al.*, *supra*.  Lo
opuesto sería concederle inmunidad absoluta al cuerpo
político en situaciones en las que el acto intencional no

---

[7]    En estos casos, responden los empleados o funcionarios del Estado en su
capacidad personal. Leyva *et al.* v. Aristud *et al.*, 132 DPR 489, 497 n. 4
(1993).

fue la única causa del daño, en patente conflicto con los principios generales de responsabilidad extracontractual. Íd. El Estado conserva su inmunidad cuando, por ejemplo, la actuación intencional de un funcionario constituye un acto aislado e imprevisible por sus superiores o no pueda establecerse nexo jurídico suficiente entre las actuaciones del empleado y los intereses del cuerpo político. Íd.; Sánchez Soto v. E.L.A., 128 DPR 497 (1991).

## 2. Persecución Maliciosa

La persecución maliciosa consiste en "la presentación **maliciosa y sin causa de acción probable**, de un proceso **criminal** o civil contra una persona, que produce daños a ésta".[8] (Énfasis suplido y citas omitidas). García v. E.L.A., 163 DPR 800, 810 (2005). Esta acción procede cuando un sujeto sigue "todas las formalidades legales requeridas pero las 'pervierte' o 'corrompe' al actuar maliciosamente y sin causa de acción probable".[9] H.M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. JTS Inc., 1986, Vol. I, pág. 110.

---

[8]    Esta causa de acción fue reconocida por este Tribunal, hace poco más de un siglo, en Parés v. Ruiz, 19 DPR 342 (1913).

[9]    La acción civil por persecución maliciosa persigue promover el uso adecuado de los mecanismos judiciales y extender un remedio a las personas que han sido objeto de procesos infundados y con motivos impropios. L. Kossis, Malicious Prosecution Claims in Section 1983 Lawsuits, 99 Va. L. Rev. págs. 1635-1636, 1638 y 1649 (2013). Pretende, asimismo, proteger la integridad del sistema de justicia del abuso de aquellos que intentan aprovecharse de su maquinaria para hostigar y causar daños. J.T. Ryan, Jr., Malicious Prosecution Claims Under Section 1983: Do Citizens Have Federal Recourse?, 64 Geo. Wash. L. Rev. 776, 779 (1996). Por último, y no menos importante, salvaguarda el interés libertario de los individuos contra procesos judiciales incoados con el fin ulterior de hostigar, abusar y causar mal. H.M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. JTS Inc., 1986, Vol. I, pág. 109.

Los cuatro requisitos esenciales a establecer para que prospere una causa de acción por persecución maliciosa, son los siguientes: 1) que el demandado instituyó o instigó una acción penal activa y maliciosamente; 2) sin causa probable; 3) que el proceso criminal concluyó de manera favorable al demandante;[10] y 4) que a consecuencia de ello, éste sufrió daños. Parrilla v. Ranger American of P.R., 133 DPR 263 (1993); Raldiris v. Levitt and Sons of P.R., Inc., 103 DPR 778 (1975); Parés v. Ruiz, 19 DPR 342 (1913).

El perjudicado deberá alegar y probar la **falta de causa probable** por parte del demandado al presentar la denuncia o acusación y la **malicia** en cuanto a los hechos. Parés v. Ruiz, *supra*. "[L]os motivos, propósitos y designios del autor (malicia combinada con falta de causa probable de acción) son relevantes". Brau del Toro, op. cit., Vol. I, pág. 110. "Es preciso que medie una imputación maliciosa, hecha de mala fe y sin fundamento razonable. […] De otra forma, se estaría obstaculizando el procedimiento de investigación de las autoridades competentes dirigido al esclarecimiento de los hechos a los fines de exigir la responsabilidad que corresponda". Raldiris v. Levitt and Sons of P.R., Inc., *supra*, pág. 782. Cabe destacar que en los casos de persecución maliciosa, la malicia no se presume. Íd. Para ello es necesario

---

[10] El estudio doctrinal propone que la absolución del demandante no es prueba *prima facie* de la ausencia de causa probable, ni una conclusión sobre la inocencia del acusado, por lo que sería menester volver a juzgar la culpabilidad del perjudicado durante el proceso civil. Brau del Toro, op. cit., Vol. I, pág. 111.

demostrar cuál era el fin ulterior del demandado al someter a un acusado a la justicia. El demandante tiene el peso de probar la malicia, con bases fácticas y no con alegaciones vagas o meras conclusiones de derecho.

El otro elemento indispensable, consiste en auscultar **si la causa penal terminó favorablemente para el demandante, mediante determinación final y firme**. C.J. Irizarry Yunqué, Responsabilidad Civil Extracontractual: Un Estudio Basado en las Decisiones del Tribunal Supremo de Puerto Rico, 7ma Ed., 2009, pág. 147. Ello es importante para establecer **a partir de qué momento el demandante adquiere conocimiento del daño y puede ejercer la causa de acción**. Esto queda satisfecho cuando el imputado de delito es absuelto o el proceso criminal ha terminado de otro modo favorable para él. Parés v. Ruiz, *supra*.

3. **Requisito de Notificación y la Justa Causa para su Incumplimiento**

El imperativo de notificación previa al soberano es otra de las condiciones impuestas por la Ley Núm. 104, cuyo incumplimiento es capaz de impedir las reclamaciones torticeras contra el Estado. El Artículo 2A de la referida disposición legal impone al agraviado el deber de dirigir una notificación escrita al Secretario de Justicia, **como requisito de cumplimiento estricto a ser satisfecho antes de entablar una acción judicial en contra del cuerpo político**. Artículo 2A(a) de la Ley de Pleitos contra el

Estado.**11**  A estos efectos, la notificación **deberá cursarse dentro de los noventa (90) días siguientes a la fecha en que el demandante adviene en conocimiento del daño.** Artículo 2A(c) de la Ley Núm. 104.

La notificación deberá cumplir con una serie de exigencias de forma y contenido.  Advertirá por escrito "en forma clara y concisa, la fecha, sitio, causa y naturaleza general del daño sufrido, los nombres y direcciones de sus testigos, y la dirección del reclamante, así como el sitio donde recibió tratamiento médico en primera instancia". Artículo 2A(e) de la Ley Núm. 104.  La disposición enfatiza que:

> **No podrá iniciarse acción judicial […] alguna contra el Estado […] por daños causados por la culpa o negligencia** de aquél, **si no se hubiese efectuado la notificación escrita en la forma y manera y dentro de los plazos prescritos** en esta sección, **a menos que no haya mediado justa causa** para ello.  (Énfasis suplido).  Artículo 2A(e) de la Ley Núm. 104.

De lo anterior se desprende que la obligación de notificar al soberano exige dos condiciones importantes. El aviso al Estado deberá producirse, **primeramente, dentro de los 90 días contados desde que el agraviado conoce el daño; y segundo, antes de éste iniciar la acción judicial.** Passalacqua v. Mun. de San Juan, 116 DPR 618 (1985).  De no satisfacerlos, la Ley Núm. 104, clara e inequívocamente, prohíbe comenzar proceso judicial alguno en contra del Estado, salvo que medie **justa causa** que **torne innecesaria**

---

**11**  La Ley Núm. 104 sufrió una enmienda importante por medio de la Ley Núm. 121 de 24 de junio de 1966, cuando el legislador añadió el requisito de notificación al Secretario de Justicia como condición previa a la presentación de una demanda en contra del Estado.  Ley Núm. 121 de 24 de junio de 1966 (1966 Leyes de Puerto Rico 396).

la notificación o **prolongue el término** para efectuarla.[12]
Artículo 2A(e) de la Ley de Pleitos contra el Estado;
Passalacqua v. Mun. de San Juan, *supra*.

La notificación impuesta por la Ley Núm. 104 responde a un **fin público específico**. Protege al Estado de reclamaciones en daños **ajenas a su conocimiento**. Acevedo v. Mun. de Aguadilla, 153 DPR 788 (2001). En repetidas ocasiones hemos pautado que la notificación pretende:

> 1) proporcionar a estos cuerpos políticos la oportunidad de investigar los hechos que dan origen a la reclamación;
>
> 2) desalentar las reclamaciones infundadas;
>
> 3) propiciar un pronto arreglo de las mismas;
>
> 4) permitir la inspe[c]ción inmediata del lugar del accidente antes de que ocurran cambios;
>
> 5) descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable;
>
> 6) advertir a las autoridades [pertinentes] de la existencia de la reclamación para que se provea la reserva necesaria en el presupuesto anual;
>
> 7) mitigar el importe de los daños sufridos […]. (Citas omitidas). Mangual v. Tribunal Superior, 88 DPR 491, 494 (1963). Véanse, además: Acevedo v. Mun. de Aguadilla, *supra*, pág. 799; Zambrana Maldonado v. E.L.A., *supra,* pág. 755.

Reiteramos que **la notificación es una parte esencial de la causa de acción**, sin la cual el Estado conserva su inmunidad y el demandante pierde su derecho a un remedio. Rosario Mercado v. ELA, *supra*; Berríos Román v. E.L.A., *supra*; Passalacqua v. Mun. de San Juan, *supra*. En ese sentido, el mencionado requisito debe aplicarse de manera

---

[12] Este requisito es inaplicable a las reclamaciones en que la responsabilidad torticera del Estado está cubierta por una póliza de seguro. 32 LPRA sec. 3077a(e) (2004). Por otra parte, los incisos (c) y (d) del Artículo 2A de la Ley Núm. 104 prevén ciertas circunstancias en las que el agraviado no está sujeto al término de 90 días, como es el caso de las personas menores de edad o con cierta incapacidad física o mental.

rigurosa. Rosario Mercado v. ELA, *supra*; Berríos Román v. E.L.A., *supra*. No obstante, su naturaleza es de **cumplimiento estricto**, con un efecto jurídico distinto al jurisdiccional. Art. 2A(e) de la Ley Núm. 104. Rosario Mercado v. ELA, *supra*; Berríos Román v. E.L.A., *supra*. Ello nos ha permitido admitir excepciones donde el esquema legislativo pierde el propósito de proteger los intereses del Estado o jurídicamente no se justifica aplicar el requisito a tales circunstancias. Rosario Mercado v. ELA, *supra*; Berríos Román v. E.L.A., *supra*; López v. Autoridad de Carreteras, 133 DPR 243 (1993).

Como cuestión de hecho, este Tribunal se ha negado a exigirlo de forma automática por ser innecesario y no contrariar los propósitos de la ley, cuando: 1) la defensa de falta de notificación es renunciada por el Estado;[13] 2) el funcionario a notificar y contra el cual se dirige la acción es el mismo, por lo que posee conocimiento personal sobre los hechos;[14] 3) el riesgo de que la prueba objetiva desaparezca es mínimo y el Estado puede corroborarla fácilmente;[15] 4) se entabla una acción directa contra la aseguradora;[16] 5) una parte presenta una reconvención compulsoria, luego de que la entidad estatal inicia una

---

[13]    Loperena Irizarry v. E.L.A., 106 DPR 357 (1977).

[14]    Acevedo v. Mun. de Aguadilla, 153 DPR 788 (2001); Méndez *et al.* v. Alcalde de Aguadilla, 151 DPR 853 (2000).

[15]    Meléndez Gutiérrez v. E.L.A., 113 DPR 811 (1983).

[16]    Cortés Román v. E.L.A., 106 DPR 504 (1977).

acción en su contra dentro del término dispuesto en ley para notificar;[17] 6) la parte ha demandado y diligenciado el emplazamiento dentro de los 90 días que requiere la ley para notificar;[18] y 7) la tardanza no es imputable al demandante y torna inútil la notificación. Rivera de Vincenti v. E.L.A., 108 DPR 64 (1978).

Aunque hemos dado una interpretación liberal a la aplicación de esta norma, **no significa que lo hayamos dejado sin efecto**, prerrogativa de exclusiva competencia legislativa.[19] Berríos Román v. E.L.A., *supra*; Loperena Irizarry v. E.L.A., 106 DPR 357 (1977). Consistente con nuestras últimas decisiones, colegimos que "el requisito de notificación mantiene su vigencia y validez, no es irrazonable ni restringe de forma indebida los derechos del reclamante". Rosario Mercado v. ELA, *supra*, pág. 567. Véase, además, Berríos Román v. E.L.A., *supra*, pág. 562. "[T]odo demandante tiene que explicar [detalladamente] la

---

**17**    Insurance Co. of P.R. v. Ruiz, 96 DPR 175 (1968).

**18**    Passalacqua v. Mun. de San Juan, 116 DPR 618 (1985).

**19**    El Profesor José Julián Álvarez sintetizó acertadamente la trayectoria jurisprudencial de este requisito procesal, de la siguiente manera:

> [O]riginalmente se aplicaba este requisito estrictamente a favor del Estado, pero paulatinamente se le ha ido quitando mucho del rigor a su interpretación. Inicialmente el Tribunal resolvió que, aunque no es de naturaleza jurisdiccional, este requisito sería de cumplimiento estricto, por lo que, entre otras cosas, hay que notificar al Secretario [de Justicia] directamente y no basta que éste se entere por otros medios. Pero muy pronto el Tribunal comenzó a aplicar la excepción de "justa causa" con gran laxitud, con lo que el supuesto "cumplimiento estricto" parecía haberse convertido en un lema sin consecuencias. […] **El Tribunal de *Berríos* reconoció esta tendencia pero, como corresponde en un sistema en el que el legislador sienta la política pública, igualmente reconoció que el requisito de notificación existe y debe ser aplicado en circunstancias apropiadas.** (Notas al calce omitidas y énfasis suplido). J.J. Álvarez González, Responsabilidad Civil Extracontractual, 77 Rev. Jur. UPR 603, 627 (2008).

tardanza en notificar al Estado conforme lo establece el Art. 2A de la Ley Núm. 104 […]". Rosario Mercado v. ELA, *supra*, pág. 573. De no ajustarse a nuestras directrices, el reclamante pierde su derecho a ir contra el Estado.

Volvemos a explicar, como lo hicimos recientemente en Rosario Mercado v. ELA, *supra*, que en un principio la Ley Núm. 104 no dictaba requisito de notificación alguno.[20] No fue hasta el 1966 que el legislador insertó esta obligación, preocupado porque **el Estado tuviese la oportunidad de conocer, oportunamente, la información sobre los hechos que generaban la causa de acción.**[21] Íd. Tan patente designio legislativo nos conduce a imprimirle eficacia a la exigencia procesal de la notificación y, en ese sentido, velar por su fiel cumplimiento.

Los tribunales tienen discreción para prorrogar los términos de cumplimiento estricto, mas no les corresponde hacerlo automáticamente. Soto Pino v. Uno Radio Group, 189

---

[20]   En este caso resolvimos que "el hecho de que una persona se encuentre recluida bajo la custodia del Estado en una institución carcelaria, no constituye de por sí y automáticamente la justa causa que exige la ley para eximir del requisito de notificación. Tal realidad no es una excepción a la norma". Rosario Mercado v. ELA, 189 DPR 561, 563 (2013).

[21]   El Informe de la Comisión de lo Judicial de la Cámara de Representantes, sobre el P. de la C. 492, de 12 de abril de 1966 expresó lo siguiente:

> En muchos casos y por diversas razones, las acciones se radican cuando ya está [por] finalizar el término y ocurre que el Estado, por el tiempo transcurrido desde que ocurrieron los alegados daños, **se encuentra con problemas de falta de información o información deficiente en cuanto a los hechos y a[u]n con la circunstancia de la reorganización de una agencia o dependencia como resultado de lo cual se han extraviado los récords que hacen referencia al accidente u origen de los daños, así como con el movimiento de testigos presenciales, cuyo paradero se ignora al momento en que se notifica de la acción, todo ello en perjuicio de la oportunidad amplia que debe tener el Estado para hacer las alegaciones correspondientes y establecer las defensas** en estos casos. (Énfasis suplido). 20 (Núm. 67) Diario de Sesiones de la Asamblea Legislativa (Cámara), T. 2, pág. 845 (1966).

DPR 84 (2013); Lugo v. Suárez, 165 DPR 729 (2005). El que sea un término de cumplimiento estricto evita la irreflexión judicial que limita el derecho de la parte agraviada a resarcir el daño y concede oportunidad a los tribunales de conocer el caso, así como proveer justicia, según lo requieran las circunstancias del caso. Meléndez Gutiérrez v. E.L.A., 113 DPR 811 (1983).

A base de lo anterior, los foros judiciales solo podrán aplazar o eximir el fiel cumplimiento del mismo cuando la parte demuestre que en efecto: 1) existe justa causa para la dilación o el incumplimiento; y 2) ofrece bases fácticas razonables que justifican la tardanza o el incumplimiento. Soto Pino v. Uno Radio Group, *supra*; Lugo v. Suárez, *supra*. Si la parte concernida no cumple ambas exigencias, el tribunal carece de discreción para excusar su conducta. Íd. Según hemos expresado, "[d]eberá demostrarse la existencia de una causa justa con **explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o la demora ocurrió por alguna circunstancia especial razonable.** No podrá acreditarse la existencia de justa causa con excusas, vaguedades o planteamientos estereotipados". (Notas al calce omitidas y énfasis en el original). Lugo v. Suárez, *supra*, págs. 738-739. Véanse, además: Rosario Mercado v. ELA, *supra*, pág. 567; Soto Pino v. Uno Radio Group, *supra*, pág. 92.

**B. Teoría Cognoscitiva del Daño**

Con el fin de poder determinar cuándo comienza a transcurrir el término de 90 días para notificar al Estado, utilizaremos por analogía la teoría cognoscitiva del daño. En Puerto Rico hemos abordado el problema de la prescripción extintiva conforme a dicha doctrina. Véanse: Allende Pérez v. García, 150 DPR 892 (2000); Colón Prieto v. Géigel, 115 DPR 232 (1984). El legislador integró al requisito de notificación de la Ley de Pleitos contra el Estado el principio comprendido en los Artículos 1868 y 1869 de nuestro Código Civil, *infra*, sobre la teoría cognoscitiva del daño.

Específicamente, el Artículo 1868, 31 LPRA sec. 5298 (1990), expresa que las acciones para exigir responsabilidad extracontractual prescriben al año **desde que el agraviado conoció el daño.** Asimismo, el Artículo 1869, 31 LPRA sec. 5299 (1990), indica que el término prescriptivo para toda clase de acciones, cuando no exista disposición especial que especifique otra cosa, **partirá desde el día en que pudieron ejercitarse las mismas.**

Interpretando el alcance de estas disposiciones a la luz de la teoría cognoscitiva del daño, este Tribunal ha expresado que el punto de partida del periodo prescriptivo comienza desde que el agraviado: **1) supo del daño, o razonablemente debió conocerlo; 2) quién fue el autor del mismo;** y **3) desde cuándo éste conoce los elementos necesarios para ejercitar efectivamente la acción.**

<u>Santiago v. Ríos Alonso</u>, 156 DPR 181 (2002).**[22]** Véase, además, <u>Vega v. J. Pérez & Cía., Inc.</u>, 135 DPR 746 (1994). Lo antes dicho nos permite deducir que el término para ejercer una acción no comienza a transcurrir desde que sucede el daño, sino desde que el agraviado conoce todos los elementos necesarios para iniciar una reclamación.

Entendemos que los preceptos antes discutidos se adaptan perfectamente al proceso de determinar el inicio del periodo de 90 días, por lo cual concluimos que **la fecha a utilizar para el cómputo del término dentro del cual existe el deber de notificar al Estado, es aquella que cumple con los requisitos esbozados aplicables al inicio del término prescriptivo.** <u>Rivera Encarnación v. E.L.A.</u>, 113 DPR 383 (1982). El punto de partida del término de 90 días impuesto por la Ley Núm. 104 para notificar al Estado, no es necesariamente cuando ocurre la alegada conducta lesiva. <u>Íd.</u>; <u>Figueroa v. E.L.A.</u>, 113 DPR 327 (1982). **Esta obligación nace desde que el agraviado adquiere conocimiento del daño, o razonablemente debió adquirirlo, quién lo causó, así como los detalles necesarios para poder**

---

**22** La postergación del término prescriptivo a tenor de la teoría cognoscitiva del daño, supone que el agraviado no sabía, ni podía saber quién es el responsable. <u>López v. Autoridad de Carreteras</u>, 133 DPR 243 (1993). Debe haber un elemento fáctico que impida conocer quién es el autor de la conducta lesiva. <u>Íd.</u> Si el desconocimiento es consecuencia de la desidia, es decir, de la falta de investigación o diligencia por parte del agraviado, entonces no procede el requisito sobre la identidad del autor que recoge la doctrina liberal relativa a la normativa de prescripción. <u>Íd.</u> Véase, además, <u>COSSEC et al.</u> v. <u>González López et al.,</u> 179 DPR 793 (2010).

Debemos aclarar que en <u>López v. Autoridad de Carreteras</u>, *supra*, no descartamos la aplicación de la teoría cognoscitiva del daño en contextos apropiados donde estuviese en controversia el momento específico en que surge el deber de notificar a una entidad municipal o estatal. En dicho caso no estaban presentes los elementos materiales que impedían a la demandante conocer el autor del daño. <u>Íd.</u>

**iniciar efectivamente su reclamación.** <u>Rivera Prudencio v. Mun. de San Juan</u>, 170 DPR 149 (2007); <u>Rivera Encarnación v. E.L.A.</u>, *supra*; <u>Figueroa v. E.L.A.</u>, *supra*.

El momento en que se **conoce o debió conocerse** el daño es materia de prueba e interpretación judicial, debido a la multiplicidad de circunstancias que inciden en el conocimiento del daño. <u>Galib Frangie v. El Vocero de P.R.</u>, 138 DPR 560 (1995); <u>Rivera Encarnación v. E.L.A.</u>, *supra*. Si bien parecería un asunto simple, el análisis sobre dicho término y sus efectos jurídicos requiere ponderar, entre otros elementos, la naturaleza o tipo de daños en relación a los hechos en cuestión. <u>Rivera Prudencio v. Mun. de San Juan</u>, *supra*; <u>Rivera Encarnación v. E.L.A.</u>, *supra*.

## C. Daños Continuados

Entre la categoría de daños relevantes a la discusión, se encuentran los daños continuados. Los daños continuados son aquellos producidos por:

> [U]no o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas, sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca -por ser previsible- el carácter continuado ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto. <u>Santiago v. Ríos Alonso</u>, *supra*, pág. 190, citando a Brau del Toro, <u>op. cit.</u>, Vol. II, pág. 648.

Los daños continuados son el resultado de un acto ilícito como unidad y no de una pluralidad de actos particulares. Brau del Toro, <u>op. cit.</u>, Vol. II, pág 648, citando a J. Santos Briz, <u>La Responsabilidad Civil</u>, 2da

ed., Ed. Montecorvo S.A., Madrid, 1977, pág. 836. Como consecuencia, este tipo de daños exige analizar detenidamente el carácter progresivo de la causa que los provoca. Por su naturaleza continua, progresiva e ininterrumpida, cada evento representa una conducta lesiva, relacionada o atada entre sí, capaz de generar un resultado definitivo. Rivera Prudencio v. Mun. de San Juan, *supra*. De ahí que el término prescriptivo inicia desde que ocurre el último de los actos o el resultado definitivo. Íd.

Los daños que surgen de la instigación de un proceso judicial malintencionado, son daños continuos. En este caso, la naturaleza del proceso penal produce una serie de daños en cada etapa del mismo, relacionados entre sí, cuyo efecto es sujetar a la persona, intencionalmente, a los vejámenes del sistema acusatorio. Los daños se configuran por la progresión de eventos aislados, "que unidos entre sí configuran un patrón de comportamiento que procura un particular estado de aprehensión en la [persona] perjudicada […]". Umpierre Biascoechea v. Banco Popular, 170 DPR 205, 219 (2007) (Sentencia) (Voto de Conformidad de la Juez Asociada señora Rodríguez Rodríguez). Cuando el procedimiento penal culmina a favor del acusado, surge el resultado definitivo que posibilita ejercitar la causa de acción.

**D. La Notificación del Fallo en el Proceso Penal**

La controversia concerniente a este recurso nos obliga a discutir aspectos medulares de nuestro ordenamiento procesal penal. El fallo y la sentencia son dos figuras jurídicas distintas que suelen confundirse y hasta entremezclarse. Pueblo v. Silva Colón, 184 DPR 759 (2012). Hemos interpretado que cuando el legislador utiliza la palabra sentencia en el contexto de los mecanismos post convicción provistos por el ordenamiento procesal penal, ello incluye el fallo condenatorio. 34 LPRA Ap. II, R. 160 (2004); Pueblo v. Silva Colón, *supra*; Pueblo v. Rodríguez Meléndez, 150 DPR 519 (2000).

El fallo es el pronunciamiento que hace el juzgador respecto a la culpabilidad o absolución del acusado, mientras que la sentencia es el dictamen del tribunal en cuanto a la pena o sanción a imponerse basado en la previa determinación de culpabilidad. 34 LPRA Ap. II, Rs. 160 y 162 (2004). El tribunal **pronunciará ambos dictámenes en sesión pública, y como regla general, en presencia del acusado,** haciéndolos constar en el registro de causas criminales y en las minutas del tribunal dentro del término prescrito en las reglas. 34 LPRA Ap. II, Rs. 163 y 165 (2004). En cuanto a los casos que se ventilan por tribunal de derecho, el fallo lo constituye la propia provisión del juzgador. 34 LPRA Ap. II, R. 160 (2004).

Tomando en cuenta lo anterior, **"[n]o hay duda de que el fallo es la determinación que pone fin a la cuestión**

**central -culpabilidad o inocencia de un acusado- en un procedimiento penal".** (Énfasis suplido). <u>Pueblo v. Rodríguez Meléndez</u>, *supra*, pág. 524. Los efectos de un fallo son variados y están anticipados en las leyes. <u>Íd.</u> Así, pues, en caso de que proceda un **fallo absolutorio**, a tenor de la Regla 164 de Procedimiento Criminal, 34 LPRA Ap. II, R. 164 (2004), ello **supone el fin de la causa criminal.**[23] Una **absolución en los méritos constituye una determinación final y firme**, capaz de impedir un ulterior proceso por mandato constitucional en contra de la doble exposición. Art. II, Sec. 11, Const. PR, LPRA, Tomo 1 (2008); Emda. V, Const. EE.UU., LPRA, Tomo 1 (2008). Véanse, además: <u>Pueblo v. Sánchez Valle *et al.*</u>, 2015 TSPR 25, 192 DPR ___ (2015); <u>Pueblo v. Santos Santos</u>, 189 DPR 361 (2013); <u>Pueblo v. Martínez Torres</u>, 126 DPR 561 (1990). Es decir, si el juzgador emite **un fallo absolutorio tras un juicio en su fondo** esa determinación, de ordinario, es final e inapelable. <u>Pueblo v. Rivera Rivera</u>, 117 DPR 283 (1986); E.L. Chiesa Aponte, <u>Derecho Procesal Penal de Puerto Rico y de Estados Unidos</u>, Colombia, Ed. Forum, 1992, Vol. II, secs. 16.2 y 16.3, págs. 368-370 y 408. Contrario a una acción civil, el Pueblo está impedido de revisar dicha decisión.[24]

---

[23]   La Regla 164 de Procedimiento Criminal, 34 LPRA Ap. II, R. 164 (2004), dispone, en lo pertinente, que el acusado declarado absuelto, deberá ser puesto inmediatamente en libertad y/o cancelarse la fianza, según proceda.

[24]   El propio esquema reglamentario dispone como fundamento para desestimar la acusación o denuncia, que el imputado haya sido absuelto del delito por el cual se pretende procesarlo. 34 LPRA Ap. II, R. 64(e) (2004 y Supl 2014).

Existe una diferencia sustancial en este respecto entre los procesos de naturaleza civil y criminal. En el procesamiento criminal, como norma general, **las determinaciones en cuanto a la culpabilidad o la pena se dictan en corte abierta y en presencia misma del acusado y de su abogado**, razón por la cual los términos para cuestionar dichas determinaciones comienzan a partir de ese momento y no desde el archivo en autos de la copia de la notificación.[25] Exposición de Motivos, Ley Núm. 140-2013, pág. 2; 32 LPRA Ap. V., R. 46 (2010); 34 LPRA Ap. II, Rs. 193 y 194 (2004 y Supl. 2014). Véase, además, Pueblo v. Pacheco Armand, *supra*. Esta característica del proceso criminal difiere del proceso civil, cuyo término análogo para proceder en alzada comienza **desde el archivo en autos de copia de la notificación escrita de las determinaciones.**[26] 32 LPRA Ap. V, Rs. 46, 52.2 y 65.3 (2010 y Supl. 2014). En la etapa en que el juzgador dicta el fallo o la sentencia, los acusados:

> de ordinario están presentes, asistidos de abogado […] por lo que, desde el punto de vista del debido proceso de ley, no hay reparo a que el término […] que éstos tienen para radicar su escrito de apelación comience a contarse desde que se dicta [el fallo o] la sentencia, **por cuanto quedan notificados el mismo día.** (Énfasis suplido).

---

[25] Esta norma general puede variar, cuando, por ejemplo, el acusado interrumpe el término para apelar al presentar un mecanismo posterior a la sentencia. Ello conlleva que el término para recurrir transcurra a partir de la notificación escrita de la resolución del mecanismo interpuesto. 34 LPRA Ap. II, Rs. 193 y 194 (2004 y Supl. 2014). Es preciso destacar que si la persona no está presente en la lectura de sentencia, a pesar de haber sido debidamente citada, se procederá a dictar la misma, ya que se presume como una ausencia voluntaria. Pueblo v. Lourido Pérez, 115 DPR 798 (1984).

[26] En los procedimientos de naturaleza civil la notificación escrita de una sentencia pone en marcha los términos para recurrir en alzada y, como norma general, adviene final y firme a los 30 días después de ser notificada. 32 LPRA Ap. V, R. 52.2 (2010 y Supl. 2014).

> Pueblo en interés menor J.M.R., 147 DPR 65, 76 (1998), citando a Pueblo *ex rel.* R.S.R., 121 DPR 293, 301 (1988).

En conclusión, todo acusado posee el derecho a estar presente en cada incidencia del juicio criminal, incluyendo en el acto de pronunciamiento del fallo. Pueblo v. Lourido Pérez, 115 DPR 798 (1984); Pueblo v. Bussman, 108 DPR 444 (1979); Chiesa Aponte, op. cit., 1993, Vol. III, sec. 33.3, pág. 535. Esta protección de estirpe constitucional está comprendida en las Reglas 58, 165 y 243 de Procedimiento Criminal.[27]  34 LPRA Ap. II, Rs. 58, 165 y 243 (2004). Por lo tanto, a diferencia del proceso civil, la presencia del acusado en el juicio y el dictamen del juzgador en corte abierta, constituyen la notificación adecuada que exige la naturaleza del trámite por virtud del debido proceso de ley.

## III

## Discusión

Según explicamos, la Ley Núm. 104 establece que el Estado no responde por conducta intencional de sus empleados en el cumplimiento de sus labores oficiales. Por esta razón, queda inmune ante reclamaciones de persecución

---

[27]   La Regla 243(a) de Procedimiento Criminal, 34 LPRA Ap. II, R. 243(a) (2004), fija el derecho de los acusados de delito grave a asistir, tanto a la lectura de acusación, así como al juicio.

El derecho de todo acusado a estar presente en toda etapa del juicio tiene raíces tanto en el Derecho común, Snyder v. Massachusetts, 291 U.S. 97 (1934), como en la cláusula de confrontación de la Enmienda Sexta [de] la Constitución de Estados Unidos, la cual se aplica a los estados a través de la Enmienda Decimocuarta. Illinois v. Allen, 397 U.S. 337 (1970). Las fuentes en Puerto Rico son la citada Enmienda Sexta y el Art. II, Secs. 7 y 11 de la Constitución del Estado Libre Asociado de Puerto Rico. Pueblo v. Lourido Pérez, *supra*, pág. 801.

maliciosa. De otra parte, el Estado sí podría responder, aunque medien actos intencionales, si coexiste conducta negligente no cobijada por su inmunidad. Conforme expresamos en el acápite anterior, no pasaremos juicio sobre si las alegaciones de responsabilidad civil extracontractual del Gobierno por negligencia en el presente caso tienen mérito o no. Confinaremos el análisis a la cuestión estrictamente procesal según planteada por el Peticionario.

Por lo tanto, debemos determinar **a partir de qué momento comienza el término de noventa (90) días que requiere la Ley Núm. 104 para notificar al Estado la intención de reclamarle daños por negligencia asociada a supuestos actos de persecución maliciosa por parte de sus funcionarios**.

Los Recurridos proponen que la notificación se efectuó dentro de los 90 días en que advinieron en conocimiento del daño, es decir, desde el archivo en autos de copia de la notificación del fallo absolutorio el 6 de diciembre de 2011. De otro lado, el Gobierno insiste en que no le notificaron oportunamente, ya que el término para hacerlo **iniciaba desde el dictamen del fallo de absolución en corte abierta, el 24 de octubre de 2011.** El foro de instancia avaló la postura de los señores Martínez y Toro. Razonó que la controversia trabada era una de daños continuos, por lo que el agraviado conoció del daño cuando se verificó el último de los actos o se produjo el resultado definitivo.

Concluyó que en el caso ante sí, por tratarse de una causa de acción fundamentada en actos de persecución maliciosa, el resultado definitivo se obtuvo con la notificación escrita de la sentencia, lo que impidió el ejercicio efectivo del derecho a reclamar hasta ese momento.

Aplicando los criterios dispuestos en la Regla 40 de su Reglamento, el Tribunal de Apelaciones denegó el *certiorari* presentado por el Peticionario. Juzgó correcta la interpretación del derecho efectuada por el tribunal de instancia, y al igual que dicho foro, coligió que los Recurridos conocieron efectivamente el daño con el archivo en autos de copia de la notificación de la Sentencia y que a partir de ese evento procesal comenzaron a transcurrir los 90 días para cursar el aviso formal al Estado.

Por estar en desacuerdo con el análisis anterior, el Gobierno planteó ante este Tribunal que el foro apelativo intermedio erró al concluir que los Recurridos notificaron oportunamente al cuerpo político su intención de demandarle. Tras analizar la controversia y los fundamentos aplicables, entendemos que el Peticionario tiene la razón, por lo que revocamos la determinación del foro apelativo intermedio.

**A. Comienzo de los 90 días**

Como explicáramos previamente, en los casos en que se reclaman daños como consecuencia de un proceso criminal suscitado intencional y maliciosamente, la causa de acción se configura cuando el agraviado establece que: 1) el

demandado instituyó o instigó una causa criminal intencional y maliciosamente; 2) sin causa probable; 3) **concluyó el proceso penal favorable al demandante;** y 4) ello le provocó daños. Por considerarse lesiones de naturaleza continua, el término prescriptivo de una acción en daños bajo el palio de la figura de persecución maliciosa **comienza cuando culmina la causa criminal, de manera final y firme, a favor del demandante.** Es a partir de ese evento específico que la persona perjudicada por el proceso penal alegadamente malicioso tiene ante sí, pues los conoce, **todos los elementos necesarios para ejercitar efectivamente su derecho a ser resarcido.** Los fundamentos en los que descansa este resultado versan sobre la naturaleza misma de algunas figuras del proceso criminal.

Las exigencias legales de origen constitucional fijan el alcance y el contenido de la notificación del fallo en el procesamiento penal de los acusados. De ordinario, requieren que **las determinaciones sobre la culpabilidad del acusado sean dictadas en corte abierta y en presencia, tanto del acusado como de su representante legal.** Esta notificación verbal activa el plazo disponible para que el acusado presente alguno de los mecanismos post convicción disponible para impugnar la determinación de culpabilidad del tribunal, tales como la apelación o la reconsideración del fallo de culpabilidad. A diferencia del proceso civil, la naturaleza misma del proceso penal, así como del derecho libertario implicado, torna innecesaria la notificación

escrita, dando por enterada a la persona imputada del delito de la determinación del juzgador **desde el preciso momento en que ésta se dicta en corte abierta.[28]** Además del carácter particular de la notificación en el proceso penal, es importante considerar el **efecto de una absolución sobre la finalidad de este cauce.**

El fallo absolutorio en sus méritos constituye una decisión final, firme e inapelable sobre la culpabilidad de un imputado. 34 LPRA Ap. II, R. 164 (2004); Pueblo v. Rodríguez Meléndez, *supra*; Pueblo v. Rivera Rivera, *supra*. Esta determinación tiene el alcance de vedar cualquier intento de exponer al ciudadano absuelto a un proceso ulterior, gracias a la garantía constitucional contra la doble exposición. Art. II, Sec. 11 Const. PR, LPRA, Tomo 1 (2008). Este principio legal que impregna de finalidad al fallo absolutorio, además de marcar el inicio del término prescriptivo para incoar una acción de daños, justifica que la persona agraviada tenga el deber de notificarle al Estado su intención de demandarle dentro de los 90 días de conocido este dictamen, sin la necesidad de esperar la notificación escrita del fallo.[29] No tiene por qué ser diferente.

---

[28]     La naturaleza expedita del proceso, también limita las notificaciones escritas durante el encauzamiento penal. Pueblo v. Pacheco Armand, *supra*.

[29]     Recordemos que este análisis aplica, en la medida en que el demandante haga imputaciones de negligencia contra el Estado y/o funcionarios relacionadas a la actuación intencional enmarcada en el proceso penal.

En síntesis, de acuerdo a los hechos que figuran en autos, la causa de acción por negligencia relacionada a eventos de alegada persecución maliciosa quedó establecida cuando el proceso penal culminó favorablemente con la absolución de los señores Martínez y Toro. El tribunal de instancia informó su fallo en corte abierta **el 24 de octubre de 2011**. Dicho dictamen **representó el fin del cauce penal**, capaz de impedir un procedimiento ulterior en contra de los Recurridos en relación a los mismos hechos delictivos por los que fueron juzgados. Por encontrarse en sala, los señores Martínez y Toro **conocieron la disposición del trámite penal ese mismo día**. Dada la naturaleza del proceso criminal, el dictamen en corte abierta y en presencia de éstos sirvió de notificación adecuada de la determinación judicial en cuanto a la no culpabilidad o inocencia de éstos. **Es a partir de ese evento procesal, no desde que el foro juzgador produce la notificación escrita, que se establece el último elemento de la causa de acción y la parte afectada adquiere conocimiento efectivo del alegado daño. Por lo tanto, a partir de ese momento comienza a transcurrir, no tan solo el término prescriptivo, sino además el término de 90 días para cumplir con su deber de notificar al Estado su intención de demandarle.** Rivera Encarnación v. E.L.A., *supra*.

De otra parte, el lenguaje incorporado en la Ley de Pleitos contra el Estado es análogo al utilizado en el Artículo 1868 del Código Civil, *supra*, al disponer que las

acciones derivadas de la culpa o la negligencia prescriben por el transcurso de un año **"desde que lo supo el agraviado"**. Rivera Encarnación v. E.L.A., *supra*. A base a lo antes planteado, **reiteramos que la fecha en que inicia el término dentro del cual existe el deber de notificar al soberano, no es necesariamente desde que ocurre la conducta lesiva**. Íd.; Figueroa v. E.L.A., *supra*. Más bien **es aquella en que efectivamente el perjudicado adviene en conocimiento de que tenía una reclamación en contra del Estado o razonablemente debió haber advenido en conocimiento**. Rivera Encarnación v. E.L.A., *supra*; Figueroa v. E.L.A., *supra*. En este caso, la fecha que sirvió de punto de partida para el cómputo del término dentro del cual existe el deber de notificar al Estado, es aquella que cumple con los requisitos esbozados aplicables al inicio del término prescriptivo. Esta es la única interpretación razonable de la frase integrada en el Artículo 2A de la Ley Núm. 104. Figueroa v. E.L.A., *supra*.

Colegimos pues, que los Recurridos adquirieron conocimiento efectivo de todos los elementos atinentes a su causa de acción basada en negligencia el **24 de octubre de 2011, cuando el juez dictó el fallo absolutorio en corte abierta**. Tenían 90 días, a partir de esa fecha, para notificar formalmente al Estado su intención de reclamar por los hechos alegados en la Demanda. No obstante, estos notificaron al Gobierno, por conducto del Secretario de Justicia, el **3 de febrero de 2012**, fuera del plazo legal

para así hacerlo, por lo que sólo nos resta determinar si éstos ofrecieron alguna razón justificando su retraso.[30]

**B. Justa Causa**

El requisito de notificación es de cumplimiento estricto, lo que admite aplazar o eximir el fiel cumplimiento del mismo. Por ello, la parte que incumple la exigencia procesal deberá demostrar justa causa para su demora, **ofreciendo explicaciones detalladas, específicas y concretas** que nos permitan ponderar, si en efecto, concurren las circunstancias extraordinarias capaces de excusar su conducta. Berríos Román v. E.L.A., *supra*. Aunque la justa causa exonera de los automatismos asociados a los plazos de naturaleza jurisdiccional, no tiene el efecto de "una liberación absoluta de los términos expresos del estatuto. S[o]lo tiene el efecto momentáneo de eximir de su cumplimiento mientras ella subsista". Rodríguez Sosa v. Cervecería India, 106 DPR 471, 483 (1977). Véase, además, Berríos Román v. E.L.A., *supra*, pág. 562.

Al indagar los argumentos esgrimidos, los Recurridos aducen que el trámite del proceso penal constituye causa suficiente para exonerarles de la fiel observancia del requisito de notificación, ya que, según alegaron, el Estado tiene el control de la información recopilada producto de la investigación, los expedientes, los testigos y toda la prueba pertinente al caso criminal. Consistentes

---

**30** Los 90 días vencían el **22 de enero de 2012**. Sin embargo, por no ser éste un día hábil, el término se extendió hasta el **lunes, 23 de enero de 2012**.

con el marco doctrinal expuesto, entendemos que apoyan su defensa en **conclusiones de derecho y argumentos estereotipados, desprovistos de especificidad, sin bases fácticas razonables** sobre las cuales podamos ponderar, si en efecto, procedía o no relevarlos de la aplicación rigurosa del requisito de notificación. No nos colocaron en posición de valorar **qué información específica en poder del Estado torna innecesaria la oportuna notificación sobre los actos torticeros alegados en la Demanda.**

Los señores Toro y Martínez **cargaban con el peso de acreditar la justa causa.** No corresponde a este Tribunal escudriñar las circunstancias del caso para determinar si existe justificación razonable por la que no vienen obligados a notificar oportunamente al Estado. El hecho de que se haya llevado a cabo un proceso penal en contra de los aquí Recurridos, de por sí, no les exime de su responsabilidad de notificarle al Estado su intención de demandarle, dentro del término legal. Resolver lo contrario, tendría el efecto de derogar el requisito de notificación de la Ley Núm. 104, para toda persona que entable una reclamación en daños contra el Estado como resultado de un proceso criminal, en abierta contradicción con la intención legislativa.

Aunque podamos tomar conocimiento de los procesos judiciales en contra de los Recurridos, existen circunstancias particulares en este caso que inciden negativamente en los intereses del Estado. No podemos

perder de perspectiva que el cauce criminal que origina este pleito civil inició el **16 de marzo de 2009** y culminó el **24 de octubre de 2011**, lo que de por sí constituye tiempo suficiente **para afectar la disponibilidad y confiabilidad de la información y los testigos.**[31] Otras circunstancias propias al funcionamiento del sistema gubernamental y que minan la oportunidad que debe tener el Estado de investigar, alegar y defenderse lo son: los cambios de administración, la movilización de personal, las reorganizaciones y la disponibilidad de los expedientes. Todos estos factores obran en perjuicio de los intereses del Estado y justificaron la inclusión del requisito de notificación en la Ley Núm. 104. Ante la situación de hechos presentada, el propósito inherente a la oportuna notificación mantiene plena vigencia por el riesgo de desaparición de la prueba, la dificultad para corroborarla y la posibilidad de tomar medidas correctivas contra los supuestos empleados involucrados.

Insistimos que uno de los propósitos de notificar al titular del Departamento de Justicia en el breve tiempo de 90 días, es proveerle la información pertinente sobre la alegada conducta lesiva del Estado y/o de sus funcionarios, de manera que pueda cumplir, cabal y oportunamente, con su obligación de investigar los hechos. Dicha información, además del ángulo de la investigación, no son materia del

---

[31] La información en cuanto a los hechos también se perjudica por el movimiento de los testigos, su paradero, así como el recuerdo de éstos.

cauce penal; su fin no es el mismo. Es importante que el Secretario de Justicia cuente con la oportunidad de recopilar toda la información pertinente para colocar al Estado en posición de tomar una decisión respecto a la reclamación en su contra, conforme lo dispone la Ley Núm. 104.

Finalmente, es meritorio enfatizar que la naturaleza y propósito del proceso penal son distintos a los del proceso civil. Ambos trámites judiciales requieren elementos probatorios particulares. En el procedimiento criminal el Pueblo intenta probar la culpabilidad de un acusado más allá de duda razonable. A diferencia de lo anterior, en una reclamación civil en daños por persecución maliciosa, es el demandante quien debe establecer, por preponderancia de la prueba, los requisitos relacionados a una acción civil extracontractual. Por último, deben establecerse, bajo el mismo estándar de prueba, los actos negligentes por los cuales estaría expuesto a responder el Estado. Estas exigencias no se cumplen necesariamente con la evidencia en poder del Estado recopilada en el cauce penal.

Los elementos del delito que forman parte esencial de un proceso penal tampoco satisfacen los requisitos probatorios de un proceso civil en el que se alega negligencia del Estado, asociada a la alegada persecución maliciosa por parte de sus funcionarios, ni proveen la información necesaria para defenderse de este tipo de acción. Las alegaciones de una reclamación de esta índole

deben estar sustentadas en bases fácticas que permitan al juzgador evaluar la procedencia de la causa de acción con el estándar probatorio antes mencionado. En un proceso civil esto es responsabilidad inequívoca de la parte demandante, quien ostenta el peso de la prueba.

**Reafirmamos que el mero hecho de que el Estado cuente con cierta información producto de un proceso criminal contra los Recurridos, no resulta, de por sí, suficiente para excusar su tardanza al notificar su intención de demandar al Estado.** Igualmente, reafirmamos que el requisito de notificación que integra la Ley Núm. 104 responde a una política pública clara dirigida a velar por los intereses del Estado. Este fundamento nos impone el deber de vigilar su fiel cumplimiento y conferirle plena validez, así como eficacia al mismo. Por lo tanto, a tenor del Artículo 2A de la Ley Núm. 104, recae en el demandante la obligación de ofrecer explicaciones razonables acerca de su tardanza en notificar al Estado.

**Reiteramos, que las explicaciones propuestas por los Recurridos son estereotipadas, desprovistas de especificidad e incapaces de tornarse en justificación adecuada que condone su demora. Tampoco resultan suficientes para establecer una de las circunstancias excepcionales en las cuales la intención de la Ley Núm. 104 pierde su propósito y no justifica la estricta aplicación del requisito de notificación. Los señores Toro y Martínez notificaron al Estado pasados los 90 días de conocer el**

**alegado daño al escuchar el fallo absolutorio dictado en corte abierta. No lograron establecer justa causa para su inobservancia del requisito de notificación, según provisto en el Artículo 2A de la Ley de Pleitos contra el Estado. Por estas razones, no procede su reclamación y corresponde desestimar la causa de acción en contra del Estado.**

## IV

Por los fundamentos que anteceden, revocamos la Resolución del Tribunal de Apelaciones y desestimamos la causa de acción que presentaron los señores Martínez y Toro en contra del Gobierno por incumplir con el requisito de notificación dispuesto en el Artículo 2A de la Ley Núm. 104. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad a lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                                        Roberto Feliberti Cintrón
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ángel Toro Rivera y Raymond Martínez Lozano<br><br>    Recurridos<br><br>    v.<br><br>Estado Libre Asociado de Puerto Rico, representado por el Secretario de Justicia, Departamento de Corrección, representado por su Secretario, Fiscales Melvin Colón Bonet y Marie Díaz León, Agente Listoriel López, Agente Aldo Flores Alicea, Agente Otoniel González, Agente Excer Quiñones, Agente John Doe, Agente Richard Doe y Compañías Aseguradoras A, B, C<br><br>    Peticionarios | **Núm.** CC-2014-0245 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 23 de diciembre de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Resolución emitida por el Tribunal de Apelaciones. En consecuencia, desestimamos la causa de acción que presentaron los Sres. Ángel Toro Rivera y Raymond Martínez Lozano en contra del Gobierno por incumplir con el requisito de notificación dispuesto en el Artículo 2A de la Ley Núm. 104 de 29 de junio de 1955, según enmendada. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad a lo aquí dispuesto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora

Rodríguez Rodríguez y la Jueza Asociada señora Pabón Charneco concurren con el resultado sin opinión escrita. El Juez Asociado señor Estrella Martínez disiente con opinión escrita a la cual se une la Jueza Presidenta señora Fiol Matta.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Toro Rivera; Raymond
Martínez Lozano

    Recurridos

      v.            CC-2014-245      Certiorari

ELA *et al*.

    Peticionarios

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se une la Jueza Presidenta SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 23 de diciembre de 2015.

Por considerar que ante los hechos particulares que presenta la controversia de epígrafe sencillamente procedía reconocer que nos encontramos ante una excepción al requisito de notificación previa para demandar al Estado, disiento de la determinación emitida por una Mayoría de este Tribunal. Entiendo que en el caso ante nos se configuran elementos atemperantes que liberan a los recurridos de notificar su intención de demandar al Estado, tal y como este Tribunal lo ha sostenido en repetidas ocasiones. En ese sentido, la Opinión Mayoritaria es contraria

a nuestros reiterados pronunciamientos con relación a esta materia, por aplicar el requisito de notificación de forma inflexible y a base de un rigorismo desmedido, en circunstancias en las que jurídicamente no se justifica. Por consiguiente, opino que no procede la desestimación de la causa de acción incoada por los recurridos.

Veamos el escenario fáctico y procesal que ocasionó la controversia de autos.

I

El caso de epígrafe inició el 23 de octubre de 2012, cuando los señores Ángel Toro Rivera y Raymond Martínez Lozano (demandantes o recurridos) instaron una demanda en daños y perjuicios –asociada a una alegada negligencia por no impedir acciones que constituyen persecución maliciosa- contra el Estado Libre Asociado de Puerto Rico (ELA), el Departamento de Corrección y Rehabilitación, dos fiscales de la División de Integridad Pública y varios agentes, así como contra sus respectivas compañías aseguradoras. La demanda en cuestión tiene su génesis en unos hechos acaecidos durante el 16 de marzo de 2009. En esa fecha, el Ministerio Público presentó cargos criminales contra los recurridos por alegadamente infringir varias disposiciones del Código Penal de 2004, 33 LPRA sec. 4629 *et seq.*, la Ley de Ética Gubernamental de 1985, 3 LPRA sec. 1801 *et seq.*, y la Ley de Sustancias Controladas de 2007, 24 LPRA sec. 2101 *et seq.* Esencialmente, los demandantes laboraban para el Departamento de Corrección y Rehabilitación, y se les

imputó la introducción en una institución penal de sustancias controladas y de un celular con su cargador eléctrico.

Celebrado el juicio en su fondo, el 24 de octubre de 2011, el Tribunal de Primera Instancia emitió un fallo en corte abierta mediante el cual declaró no culpables a los recurridos de los cargos imputados.[32] El pronunciamiento del tribunal fue notificado por escrito el 6 de diciembre de 2011.

Ante el cuadro descrito, el 1 de febrero de 2012, los recurridos notificaron al entonces Secretario de Justicia (Secretario) su intención de demandar al Estado y, según indicado, el 23 de octubre de 2012, incoaron la acción en daños y perjuicios alegando negligencia por no impedir acciones que constituyen persecución maliciosa. En esencia, los recurridos adujeron que los fiscales fueron negligentes en el descargo de sus funciones, toda vez que les imputaron cargos criminales sin que existiera prueba contra éstos y a sabiendas de que era un caso "fabricado". Asimismo, alegaron que la investigación llevada a cabo por los agentes encargados del caso fue deficiente y que los testigos de cargo desconocían los hechos básicos. Del mismo modo, sostuvieron que el Estado era responsable del

---

[32]A solicitud del Ministerio Público, el Tribunal de Primera Instancia archivó los cargos contra el Sr. Raymond Martínez Lozano por las alegadas infracciones a la Ley de Sustancias Controladas de 2007, 24 LPRA sec. 2101 *et seq.*, y al Art. 283 del Código Penal de 2004, 33 LPRA sec. 4911.

proceder de sus funcionarios, empleados y agentes, quienes instaron un proceso criminal en su contra a pesar de que no incurrieron en conducta delictiva.

Con relación a los daños, los recurridos arguyeron que como resultado del proceso penal iniciado en su contra, fueron destituidos de sus puestos, sufrieron humillaciones y experimentaron pérdidas económicas, emocionales y familiares. Como corolario, solicitaron indemnización por los daños psicológicos, las angustias mentales y las pérdidas sufridas.

El 18 de marzo de 2013, el ELA presentó una *Moción de Desestimación*. En lo pertinente, alegó que los recurridos incumplieron con el requisito de notificación oportuna al Secretario, conforme lo dispone el Art. 2A de la Ley Núm. 104 de 29 de junio de 1955 (Ley Núm. 104), según enmendada, conocida como la *Ley de Reclamaciones y Demandas Contra el Estado*, 32 LPRA sec. 3077a. Para el ELA, el plazo de 90 días para notificar al Secretario comenzó a transcurrir desde que se emitió el fallo de no culpabilidad. Así las cosas, adujo que la notificación fuera del término repercutió adversamente en la preparación de su defensa.

Posteriormente, los recurridos presentaron una *Réplica en Oposición a Moción de Desestimación*. En síntesis, alegaron que el plazo para notificar al Estado su intención de demandarlo comenzó a transcurrir a partir de la notificación de la sentencia y no desde que se emitió el fallo de no culpabilidad. Además, sostuvieron que el Estado

conoce y tiene control de la prueba del caso, por lo que están eximidos del deber de notificación previa al Secretario.

Ponderados los argumentos de las partes, el 2 de mayo de 2013, el Tribunal de Primera Instancia declaró no ha lugar la solicitud de desestimación. En desacuerdo, el ELA presentó una *Moción de Reconsideración*, en la cual expresó que el proceso penal contra los recurridos no los relevó de su deber de notificar oportunamente al Estado la intención de demandarlo. Para el ELA, concluir lo contrario lo dejaría en estado de desventaja e indefensión.

Oportunamente, los recurridos se opusieron a la reconsideración solicitada por el ELA. En lo pertinente, objetaron la alegada indefensión del Estado bajo el argumento de que la información pertinente al pleito está a cargo de sus propios funcionarios, empleados y agentes y, a su vez, no existe el riesgo de que ésta desaparezca.

Tras aquilatar las posturas de las partes, el 30 de octubre de 2013, el foro primario emitió una Resolución en la cual declaró no ha lugar la reconsideración solicitada. Razonó que aun cuando el resultado favorable de la acción penal fue el 24 de octubre de 2011, el término para notificar al Estado comenzó a transcurrir desde que la sentencia fue notificada por escrito el 6 de diciembre de 2011, pues en esa fecha el cauce penal advino final y firme. Esto, ya que determinó que la controversia era una de daños continuos, por lo que los agraviados conocieron

del daño cuando se verificó el último de los actos o se produjo el resultado definitivo. Como en el caso de autos la causa de acción está fundamentada en actos de persecución maliciosa, el foro primario dictaminó que el resultado definitivo se obtuvo con la notificación escrita de la sentencia. Por ende, concluyó que la notificación remitida al Secretario el 1 de febrero de 2012 se realizó dentro del requerido plazo de 90 días.

Inconforme, el ELA acudió ante el Tribunal de Apelaciones. Esencialmente, adujo que el foro primario incidió al determinar que los recurridos cumplieron con el requisito de notificación oportuna dispuesto en el Art. 2A de la Ley Núm. 104. Examinado el caso, el 26 de febrero de 2014, el foro apelativo intermedio emitió una Resolución mediante la cual denegó la expedición del recurso instado. En su dictamen, expresó que los recurridos notificaron oportunamente al Secretario y presentaron su causa de acción dentro del plazo dispuesto en ley. Así las cosas, concluyó que el foro primario no incurrió en abuso de discreción o error en la aplicación de la norma procesal vigente.

En disconformidad con la determinación, el ELA recurrió ante este Tribunal mediante recurso de *certiorari*. En éste, señala que el Tribunal de Apelaciones erró al determinar lo siguiente: (1) que el dictamen del Tribunal de Primera Instancia no constituyó un abuso de discreción; y (2) que los recurridos notificaron oportunamente al

Secretario su intención de demandar al Estado. El ELA subraya que es a partir del fallo absolutorio dictado en corte abierta que comienza a transcurrir el término de 90 días para notificarle al Estado. Esto, toda vez que plantea que en esa fecha los recurridos conocieron el resultado final, firme e inapelable del proceso criminal instado en su contra.

En atención a lo anterior, el 31 de octubre de 2014, este Tribunal emitió una Resolución mediante la cual expidió el auto de *certiorari* presentado. Evaluados los argumentos de las partes, una Mayoría de este Tribunal acogió la postura del ELA y determinó que el término de 90 días para notificar al Estado la intención de demandarlo en daños y perjuicios –basado en alegada negligencia por no impedir acciones que constituyen persecución maliciosa– comienza a transcurrir desde que se pronuncia el fallo absolutorio. Tal razonamiento condujo a una Mayoría de este Tribunal a aplicar el requisito de notificación de forma extrema y, por consiguiente, desestimar la acción judicial incoada por los recurridos, contrario a los precedentes que discutiremos a continuación.

Como considero que en el caso de autos se configura la *justa causa* que libera a los recurridos del deber de notificar al Estado la intención de instar una reclamación en su contra, no me queda más que disentir del curso de acción seguido por una Mayoría de este Tribunal, pues este deber de notificar es totalmente inaplicable a las

circunstancias particulares ante nuestra consideración. Veamos.

## II

Como es sabido, en nuestro ordenamiento jurídico rige la doctrina de inmunidad soberana, desde que fue reconocida por el Tribunal Supremo de los Estados Unidos en el caso Porto Rico v. Rosaly, 227 US 270 (1913). Al amparo de esta doctrina, se impide la presentación de reclamaciones judiciales contra el Estado en circunstancias en que no ha mediado su consentimiento. Doble Seis Sport v. Depto. Hacienda, 190 DPR 763, 788 (2014); Guadiola Álvarez v. Depto. de la Familia, 175 DPR 668, 679 (2009); Berríos Román v. ELA, 171 DPR 549, 555 (2007); Defendini Collazo et al. v. ELA, 134 DPR 28, 40 (1993). Cabe señalar que el reconocimiento de la inmunidad soberana propició que nuestra Asamblea Legislativa promulgara una serie de estatutos dirigidos a autorizar cierto tipo de acciones judiciales contra el Estado. Particularmente, en 1955 se aprobó la Ley Núm. 104, mediante la cual el Estado consintió a ser demandado en daños y perjuicios por actuaciones y omisiones culposas o negligentes de sus funcionarios, empleados o agentes en el desempeño de sus funciones. 32 LPRA sec. 3077(a). Asimismo, se autorizaron las reclamaciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, y, a su vez, demandas fundadas en la Constitución, en cualquier ley o

reglamento de Puerto Rico o en algún contrato con el Estado. 32 LPRA secs. 3077(b) y 3077(c).

**A.**

Ahora bien, la renuncia del Estado a su inmunidad, aunque amplia, no conlleva una autorización ilimitada contra la protección que le cobija. Doble Seis Sport v. Depto. Hacienda, *supra*, pág. 789; Guardiola Álvarez v. Depto. de la Familia, *supra*, pág. 679. Esto, toda vez que la Ley Núm. 104 vino acompañada de restricciones y salvaguardas procesales que gobiernan la manera en que se puede reclamar indemnización al Estado.[33] Rosario Mercado v. ELA, 189 DPR 561, 566 (2013); Guardiola Álvarez v. Depto. de la Familia, *supra*, pág. 680; Berríos Román v. ELA, *supra*, pág. 556. De esta forma, el Art. 6 de la Ley Núm. 104 incluye una serie de actos para los cuales el Estado no cedió su inmunidad. En particular, se prohíbe demandar al Estado para exigir indemnización por los actos y omisiones de un funcionario, empleado o agente que constituyan "acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura". 32 LPRA sec. 3081(d). En otras palabras, el Estado responde por los actos negligentes de sus funcionarios, empleados o agentes en el descargo de sus

---

[33]Entre las limitaciones estatutarias impuestas se encuentra el tope de cuantía que todo reclamante puede obtener al demandar al Estado. *Véase* 32 LPRA sec. 3077.

funciones, pero, de ordinario, mantiene su inmunidad cuando esas actuaciones constituyen conducta intencional o constitutiva de delito. Guardiola Álvarez v. Depto. de la Familia, *supra*, pág. 680; Berríos Román v. ELA, *supra*, pág. 556; Valle v. ELA, 157 DPR 1, 16 (2002).

En cuanto a lo anterior, es menester hacer hincapié en que este Tribunal ha sostenido que el Estado puede ser responsable si la actuación ilegal que prohíbe el Art. 6 de la Ley Núm.104 es una en la que medió un grado mayor de negligencia que de intención. *Véanse* Valle v. ELA, *supra*; Leyva *et al*. v. Aristud *et al*., 132 DPR 489 (1993); Alberio Quiñones v. ELA, 90 DPR 812 (1964); Meléndez v ELA, 81 DPR 824 (1960). Esto es, el hecho de que se trate de actuaciones intencionales de los funcionarios, empleados o agentes, no es suficiente para automáticamente brindarle inmunidad al Estado. Leyva *et al*. v. Aristud *et al*., *supra*, pág. 512. Concluir lo contrario conllevaría concederle un manto de inmunidad al Estado en circunstancias en las que las actuaciones intencionales no constituyen la única causa del daño, lo que frustraría el propósito de la Ley Núm. 104. Íd.

A esos efectos, es oportuno reiterar que el Estado está sujeto a responder en cualquiera de los siguientes supuestos: (1) cuando el funcionario, empleado o agente causa un daño por su exclusiva culpa o negligencia mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el funcionario, empleado o agente causa un daño

mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente, aun cuando dicha conducta tenga algunos elementos intencionales; (3) cuando, a pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados de cocausantes del daño por los cuales sí debe responder el Estado; y (4) cuando el Estado, a través de sus agentes, es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución. Íd., págs. 510-511; Hernández v. ELA, 116 DPR 293 (1985); Negrón v. Orozco Rivera, 113 DPR 712 (1983); Morales Garay v. Roldán Coss, 110 DPR 701 (1981); Galarza Soto v. ELA, 110 DPR 701 (1979).

## III

En lo pertinente a la controversia que nos ocupa, cabe señalar que una de las salvaguardas procesales que rigen la manera en que se puede demandar al Estado es el deber de notificación previa. Este requisito fue añadido a la Ley Núm. 104 en virtud de la Ley Núm. 121 de 2 de junio de 1966. (1966 Leyes de Puerto Rico 396-397). Esencialmente, el Art. 2A de la Ley Núm. 104 establece que como condición previa a entablar una acción judicial contra el Estado se debe notificar al Secretario de Justicia dentro de los 90 días siguientes a la fecha en que el agraviado advino en conocimiento del daño. 32 LPRA sec. 3070a(c); *véanse,*

además, Rosario Mercado v. ELA, *supra*, pág. 566; Berríos Román v. ELA, *supra*, pág. 557.

En esa notificación se debe hacer constar la fecha, el lugar, la causa y naturaleza del daño sufrido, los nombres y direcciones de sus testigos, la dirección del reclamante, así como el lugar donde recibió tratamiento médico. 32 LPRA sec. 3077a(a). En aquellas situaciones en las que el reclamante estuviera física o mentalmente imposibilitado de notificar dentro del plazo de 90 días, podrá hacerlo dentro de los 30 días siguientes a la fecha en que cese la incapacidad. 32 LPRA sec. 3077a(c). También surge del Art. 2A que no podrá iniciarse reclamación judicial contra el Estado sin la notificación previa, a menos que medie *justa causa*. 32 LPRA sec. 3077a(e).

El requisito de notificación previa persigue un fin público específico: proteger al Estado de reclamaciones ajenas a su conocimiento. Su propósito es poner sobre aviso al Estado de que ha surgido una probable causa de acción en daños en su contra, de modo que pueda activar sus recursos de investigación prontamente. Berríos Román v. ELA, *supra*, pág. 559; Romero Arroyo v. ELA, 127 DPR 724, 734 (1991); Rivera de Vicenti v. ELA, 108 DPR 64, 69 (1978). Además, en repetidas ocasiones este Tribunal ha expresado que el requerimiento de una notificación responde a los siguientes propósitos y objetivos: (1) propiciar la oportunidad de investigar los hechos que dan origen a la reclamación; (2) desalentar reclamaciones infundadas; (3) fomentar un pronto

arreglo de las mismas; (4) permitir la inspección inmediata del lugar del accidente antes de que ocurran los cambios; (5) descubrir el nombre de las personas que tienen conocimiento de los hechos; (6) advertir a las autoridades pertinentes de la existencia de la reclamación; y (7) mitigar el importe de daños sufridos. Rosario Mercado v. ELA, *supra*, pág. 566; Acevedo v. Mun. de Aguadilla, 153 DPR 788, 799 (2001); Méndez *et al*. v. Alcalde de Aguadilla, 151 DPR 853, 860-861 (2000).

**A.**

Si bien este Tribunal ha expresado que la notificación previa es una parte esencial de la causa de acción, hemos reiterado que su naturaleza es de cumplimiento estricto. Rosario Mercado v. ELA, *supra*, pág. 567; Berríos Román v. ELA, *supra*, pág. 560; Acevedo v. Mun. de Aguadilla, *supra*, pág. 800. Es por ello que se ha excusado su cumplimiento cuando, de lo contrario, se ocasionaría una grave injusticia que privaría a un reclamante de una legítima causa de acción. Rosario Mercado v. ELA, *supra*, pág. 567; Berríos Román v. ELA, *supra*, pág. 560. De esta forma, se han permitido excepciones donde el esquema legislativo pierde el propósito de proteger los intereses del Estado o donde jurídicamente no existe razón para aplicar este requisito. Rosario Mercado v. ELA, *supra*, pág. 567; Berríos Román v. ELA, *supra*, pág. 560.

Es decir, aunque la "norma general" es que el requisito de notificación debe ser aplicado de forma

estricta, consecuentemente este Tribunal se ha negado a exigirlo cuando: (1) el daño o la negligencia la cometió el mismo funcionario a quien se tiene que notificar, pues posee conocimiento de los hechos; (2) el emplazamiento ocurre dentro del plazo de 90 días provisto para la notificación; (3) la tardanza en la notificación no es imputable al demandante; (4) el riesgo de desaparición de la prueba objetiva es mínimo, hay constancia de la identidad de los testigos, y el Estado puede investigar y corroborar los hechos con facilidad; (5) el Estado renuncia a la defensa de falta de notificación; y (6) se insta una acción directa contra la aseguradora, entre otras. *Véanse* Rosario Mercado v. ELA, *supra*, pág. 567; Berríos Román v. ELA, *supra*; Acevedo v. Mun. de Aguadilla, *supra*; Méndez *et al*. v. Alcalde de Aguadilla, *supra*; Romero Arroyo v. ELA, *supra*; Passalacqua v. Mun. de San Juan, 116 DPR 618 (1985); Meléndez Gutiérrez v. ELA, 113 DPR 811 (1983); Rivera de Vicenti v. ELA, *supra*; Cortés Román v. ELA, 106 DPR 504 (1977); Loperena Irizarry v. ELA, 106 DPR 357 (1977).

Es pertinente enfatizar que la trayectoria jurisprudencial no ha sido la de dejar sin efecto un requisito que el legislador ha dispuesto que debe cumplirse, sino la de emplearlo a los casos en los que propiamente debe aplicarse, sin rigorismos desmedidos. Acevedo v. Mun. de Aguadilla, *supra*, pág. 800; López v. Autoridad de Carreteras, 133 DPR 243, 252 (1993). En aras de imprimirle vitalidad al propósito rector de la Asamblea

Legislativa, este Tribunal se ha negado a aplicar el requisito de notificación previa de forma inexorable. Berríos Román v. ELA, *supra*, pág. 560. En armonía con ello, se ha adoptado una trayectoria liberalizadora con el fin de no extender sin sentido crítico el requisito de notificación a situaciones en las cuales sus objetivos carecen de virtualidad y conllevarían una injusticia. Íd. De hecho, ya que no se trata de un requisito que alcanza la calidad de condición jurisdiccional, en muchas ocasiones este Tribunal ha permitido una aplicación flexible de la norma en atención a que el propósito u objetivo del requisito de notificación no resultaría adversamente afectado. Acevedo v. Mun. de Aguadilla, *supra*, pág. 800; Méndez *et al*. v. Alcalde de Aguadilla, *supra*, pág. 861. Así, se libera al tribunal de un automatismo dictado por el calendario y salva su facultad para conocer del caso y proveer justicia, según lo ameriten las circunstancias. Rivera de Vicenti v. ELA, *supra*, pág. 70; Loperena Irizarry v. ELA, *supra*, pág. 360. En fin, en Berríos Román v. ELA, *supra*, pág. 563, este Tribunal fue enfático en establecer que en aquellas circunstancias en que la exigencia de la notificación desvirtúe los propósitos de la Ley Núm. 104, "se podrá eximir al reclamante de notificar al Estado para evitar la aplicación extrema y desmedida de dicha exigencia".

**IV**

Examinada la normativa jurídica pertinente, procedo a exponer mi criterio con relación a la controversia que presenta el caso de epígrafe. Veamos.

Como indiqué, se desprende de los autos que el 16 de marzo de 2009, el Ministerio Público le imputó a los recurridos transgresiones al Código Penal, a la Ley de Ética Gubernamental y a la Ley de Sustancias Controladas. Ventilado el juicio en su fondo, el tribunal emitió un fallo de no culpabilidad el 24 de octubre de 2011 y el 6 de diciembre de 2011 se notificó la respectiva sentencia. Así las cosas, el 1 de febrero de 2012, los recurridos notificaron al Secretario su intención de demandar al Estado. Posteriormente, el 23 de octubre de 2012, presentaron una demanda en la que alegaron daños como consecuencia de la negligencia del Estado de no impedir acciones de sus funcionarios, empleados o agentes que constituyen persecución maliciosa.

Ante ello, el ELA solicitó la desestimación de la reclamación bajo el fundamento de que la notificación efectuada no fue oportuna. Por su parte, los recurridos arguyeron que el plazo para notificar al Estado comenzó a transcurrir a partir de la notificación de la sentencia y no desde que se emitió el fallo de no culpabilidad, tal como alegó el ELA. Asimismo, sostuvieron que como el Estado conoce y tiene control de la prueba del caso están excusados del deber de notificación previa.

Aquilatados los argumentos de las partes, el Tribunal de Primera Instancia declaró no ha lugar la desestimación solicitada. Vista una solicitud de reconsideración, el foro primario la declaró no ha lugar y concluyó que el término para notificar al Estado comenzó a transcurrir a partir de la notificación de la sentencia, pues en esa fecha el proceso advino final y firme. En desacuerdo, el ELA acudió al Tribunal de Apelaciones, el cual denegó la expedición del recurso. Aun inconforme, el ELA recurrió ante este Tribunal.

Evaluado el caso, una Mayoría de este Tribunal se embarcó innecesariamente en responder a partir de qué momento comienza a transcurrir el término de 90 días que requiere la Ley Núm. 104 para notificar al Estado la intención de reclamarle daños por negligencia -asociada a supuestos actos de persecución maliciosa por parte de sus funcionarios, empleados o agentes-. Tal proceder llevó a una Mayoría de este Tribunal a acoger la postura esgrimida por el ELA y, en consecuencia, desestimar la causa de acción incoada por los recurridos.

No obstante, y contrario a lo razonado por una Mayoría de este Tribunal, soy del criterio que en el presente caso, de entrada, correspondía preguntarse si el hecho de que el Estado *controle*, *maneje* y *tenga en su poder* información producto de un proceso criminal del cual fue promovente, constituye *justa causa* para eximir del deber de notificar la intención de instar una reclamación en su contra por

daños y perjuicios -asociada a alegada negligencia por no impedir acciones que constituyen persecución maliciosa-.[34] Ello, a la luz de los fundamentos estatutarios y jurisprudenciales expuestos. La Opinión Mayoritaria descarta tal análisis y, de esa forma, se aleja de los reiterados pronunciamientos de este Tribunal con relación al particular. Asimismo, pretende pautar una norma que resulta inaplicable al caso de autos. Es más, de la Opinión Mayoritaria se colige que el hecho de que el Estado cuente con información producto de un proceso criminal no resulta suficiente para excusar el cumplimiento del requisito de notificación previa. Ante ello, no me queda más que disentir del proceder seguido por este Tribunal. Me explico.

## A.

Como surge de los autos, los hechos que motivan la controversia de epígrafe alegadamente fueron producto de los actos directamente efectuados por los funcionarios, empleados y agentes que participaron en las diversas etapas del proceso penal que se llevó a cabo contra los recurridos. A tales efectos, es ineludible concluir que el Estado, como parte promovente de la causa penal incoada en el 2009 y culminada en el 2011, tiene *pleno conocimiento* de los hechos alegados en la demanda presentada por los

---

[34]La controversia ante este Tribunal es una de índole procesal, por lo que en esta etapa no corresponde pasar juicio con relación a los méritos de la reclamación en daños y perjuicios instada por los recurridos.

recurridos. Ello, pues, *controla*, *maneja y tiene en su poder* la información recopilada producto de la investigación y del proceso penal instado contra los recurridos. Es decir, la información pertinente al pleito está en manos del Estado y *no corre el riesgo de desaparecer*. Por tal motivo, es forzoso establecer que el Estado tiene constancia de la identidad de los testigos y puede fácilmente investigar, corroborar o refutar los hechos alegados en la demanda presentada.

Entiendo que en este caso particular, donde el Estado *conoce y maneja* los hechos alegados en la demanda por ser promovente de la causa penal, donde *la información está en poder del Estado sin riesgo de que desaparezca* y donde, por tanto, *hay constancia de la identidad de los testigos* y se puede *fácilmente investigar, corroborar o refutar los hechos alegados*, se configura la *justa causa* que hemos reconocido para eximir la observancia del requisito de notificación. En otras palabras, se presenta una circunstancia excepcional que justifica excusar el cumplimiento del requisito de notificación en casos de reclamaciones de daños y perjuicios contra el Estado – asociadas a alegada negligencia por no impedir acciones que constituyen persecución maliciosa–. Ello guarda perfecta armonía con el tratamiento jurisprudencial que este Tribunal le ha brindado al requisito de notificación previa.

Considero que en las circunstancias que presenta el caso de epígrafe no existe razón para aplicar el requisito de notificación, toda vez que el referido fin público que éste persigue no resulta afectado, ni se contrarían sus propósitos y objetivos jurídicos. Por tanto, en el escenario fáctico ante nuestra consideración, la notificación carece de vitalidad, pues constituye un mero formalismo sin propósito. Sin duda, exigir la notificación previa en estas circunstancias redundaría en un requerimiento, a lo sumo, irrazonable y nada práctico.

En fin, a mi juicio, éste es uno de esos casos en los cuales no debe ser de aplicación rigurosa ni inexorable el requisito previo de notificación, ya que se configura una excepción que ha sido avalada por este Tribunal en repetidas ocasiones. Esto es, se configura un elemento atemperante que libera a los reclamantes de notificar al Estado, tal como se reconoció en Berríos Román v. ELA, supra, pág. 562. El cuadro fáctico que presenta esta controversia me lleva a concluir que el requisito de notificación establecido por la Ley Núm. 104 no debe constituir un obstáculo insalvable que acarree la desestimación de la acción de daños y perjuicios –asociada a alegada negligencia por no impedir acciones que constituyen persecución maliciosa– presentada por los recurridos. Como una Mayoría de este Tribunal se aleja de la consecuente trayectoria jurisprudencial que este Tribunal le ha otorgado al requisito de notificación

previa, al decidir aplicarlo -a base de un automatismo inflexible e innecesario- en circunstancias en las que es diáfano que se configura una excepción, disiento.

## V

Amparado en los preceptos expuestos, disiento de la determinación emitida por una Mayoría de este Tribunal. En su lugar, confirmaría, por los fundamentos aquí enunciados, los dictámenes de los foros recurridos y devolvería el caso al foro primario para la continuación de los procedimientos.

Luis F. Estrella Martínez

Juez Asociado