Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ANTONIO HUERTAS ANDÚJAR POR SÍ Y/O EN REPRESENTACIÓN DE BRUNILDA MERCADO SANTANA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS Y ULISES A. HUERTAS MERCADO<br><br>Apelantes<br><br>v.<br><br>DR. LUIS R. CANETI MIRABAL, SINDICATO DE ASEGURADORAS PARA LA SUSCRIPCIÓN CONJUNTA DE SEGUROS DE RESPONSABILIDAD PROFESIONAL MÉDICO-HOSPITALARIO (SIMED), PLAN DE SALUD MENONITA INC., SISTEMA DE SALUD MENONITA, HOSPITAL MENONITA CAGUAS INC., ASEGURADORA XYZ, ASEGURADORA ABC, CORPORACIÓN B Y C, SR. FULANO DE TAL, ESPOSA DEL SR. FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES, COMPAÑÍA FEB, ET ALS<br><br>Apelados | KLAN202300915 | ***Apelación***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Civil Núm.: CG2020CV01433 (Sala 804)<br><br><br>Sobre:<br><br><br>Impericia Médica, Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2024.

Comparece el Sr. Ulises A. Huertas Mercado y el Sr. Antonio Huertas Andújar (en adelante, parte apelante) mediante un *Recurso de Apelación* y nos solicitan la revisión de la *Sentencia Parcial* dictada el 25 de agosto de 2023 y notificada el 28 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en

Número Identificador

SEN 2024_____

adelante, TPI). Mediante este dictamen, el TPI declaró Ha Lugar la *Moción de Desestimación* presentada por el Dr. Edwin López Robles (en adelante, Dr. López Robles o parte apelada) el 28 de marzo de 2023 y, en consecuencia, se desestimó la demanda en cuanto a este codemandado.

Por los fundamentos que expondremos, se revoca la *Sentencia Parcial* apelada.

**I**

El 14 de julio de 2020, el Sr. Ulises A. Huertas Mercado y el Sr. Antonio Huertas Andújar, por sí y en representación de la Sra. Brunilda Mercado Santana y la Sociedad Legal de Gananciales compuesta por ambos, presentaron una *Demanda* sobre daños y perjuicio por impericia médica en contra del Dr. Luis R. Canetti Mirabal, el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Médico-Hospitalaria (en adelante, SIMED), el Plan de Salud Menonita, Inc., el Sistema de Salud Menonita, y el Hospital Menonita de Caguas, Inc. (en adelante, Hospital Menonita de Caguas).[1] Además, se incluyeron en la demanda varias partes demandadas de nombres desconocidos designadas con nombres ficticios. Entre estas, se incluyó al Dr. Fulano De Tal, a la esposa del Dr. Fulano De Tal, y la Sociedad Legal de Bienes Gananciales compuesta por ambos; y a la Dra. Fulana De Tal, el esposo de la Dra. Fulana De Tal, y la Sociedad Legal de Bienes Gananciales compuesta por ambos.[2] En cuanto a estas partes, se alegó lo siguiente:

> "[S]on una parte responsable con las demás partes codemandadas de ocasionarles primaria o solidariamente los daños alegados en esta demanda a la parte demandante. Se ha denominado un nombre ficticio por desconocerse su verdadero nombre y/o

---

[1] Apéndice del *Recurso de Apelación*, págs. 59-68.
[2] Además, se incluyeron las partes desconocidas siguientes: Aseguradora XYZ, Aseguradora ABC, Compañía A, Corporación B y C, Sr. Fulano De Tal, esposa del Sr. Fulano De Tal, y la Sociedad Legal de Bienes Gananciales compuesta por ambos, y Compañía FEB.

existencia. Una vez se conozcan sus verdaderos nombres se hará la sustitución de rigor."[3]

En cuanto a la causa de acción, en la demanda se solicitó una indemnización por los daños y perjuicios sufridos por la alegada falta de pericia profesional de las partes demandadas al brindarle tratamiento médico a la Sra. Brunilda Mercado Santana en el Hospital Menonita de Caguas. Según se alegó, el 12 de julio de 2019, el Sr. Ulises A. Huertas Mercado y el Sr. Antonio Huertas Andújar llevaron a la Sra. Brunilda Mercado Santana a la sala de emergencias del Hospital Menonita de Caguas para que le revisaran el pie izquierdo debido a que estaba hinchado y de color violeta.

> "3. Al llegar al Hospital Menonita, médicos del hospital y/o empleados de este atienden a la demandante. Estos le ordenan que se le realizara una placa al pie de la Sra. Mercado. Luego de que se realizara la misma, le informaron al Sr. Ulises que del resultado de las mismas no se reflejaba que tuviera alguna fractura. Por lo que se limitaron a recetarle antibióticos. Esto a pesar de que el Sr. Ulises le[s] informó a los médicos que la Sra. Mercado no tomaba medicamentos. Se le dio de alta a la Sra. Mercado.
>
> 4. El 16 de julio de 2019 la Sra. Mercado empezó a quejarse de dolor en el pie izquierdo, no quería comer y no se levantaba de su cama. Por lo que los codemandantes llamaron a una ambulancia y de allí trasladaron a la Sra. Mercado nuevamente al Hospital Menonita de Caguas. Admiten a la demandante a las 5:17 pm. El Dr. Luis R. Canetti le[s] informa a los demandantes que la Sra. Mercado tenía necrosis o gangrena y que había que amputarle el dedo del pie izquierdo.
>
> 5. El 17 de julio de 2019 el Dr. Canetti decide que hay que hacerle una cirugía a la Sra. Mercado. Empezaron amputándole un dedo y luego de dos operaciones más le amputaron la parte frontal del pie izquierdo. Esto sometiéndola a anestesias generales que exacerban la condición de Alzheimer que padece la codemandante. La demandante estuvo recluida en el Hospital desde el 16 de julio hasta el 13 de agosto de 2019.
>
> 6. El Dr. Canetti no realizó los estudios correspondientes para identificar lo que le estaba ocurriendo a la demandante en su pie izquierdo. De haberlo hecho tales estudios, hubiese salvado su pie. El Dr. Canetti no informó a los familiares de las consecuencias de las operaciones incumpliendo de esta forma la doctrina del consentimiento informado. El Dr.

---

[3] Apéndice del *Recurso de Apelación*, pág. 63.

Canetti no ofreció a la demandante un diagnóstico y tratamiento adecuado, alejándose de la mejor práctica de la medicina.

7. El personal del Hospital codemandado no realizó los estudios correspondientes para identificar lo que le estaba ocurriendo a la demandante en su pie izquierdo. De haberlo hecho tales estudios, hubiese salvado su pie. El personal del Hospital codemandado no informó a los familiares de las consecuencias de las operaciones incumpliendo de esta forma la doctrina del consentimiento informado. El personal del Hospital codemandado no ofreció a la demandante un diagnóstico y tratamiento adecuado, alejándose de la mejor práctica de la medicina.

8. El Hospital Menonita no realizó las evaluaciones correspondientes al Dr. Canetti para cerciorarse de que este cumplía con los requerimientos necesarios para brindar una atención médica adecuada ni que estuviera preparado para ejercer la profesión en el Hospital.

[…]."[4]

Luego de varios trámites procesales,[5] el 23 de enero de 2023, se presentó una *Demanda Enmendada* con el fin de incluir como parte demandada en el pleito al Dr. Edwin López Robles (en adelante, Dr. López Robles), a su esposa, y a la Sociedad Legal de Gananciales compuesta por ambos.[6] En cuanto al Dr. López Robles, se alegó en la *Demanda Enmendada* lo siguiente:

"7. El Dr. Edwin B. López Robles es un profesional de la salud. Según nuestro mejor entender éste es un profesional que tenía privilegios como médico en el codemandado, Hospital Menonita Caguas, Inc. y/o es empleado de dicha institución médica y/o es empleado de la institución que administra el Hospital codemandado. El Dr. López Robles tiene constituida una Sociedad de Gananciales compuesta con Fulana de Tal. Este atendió de forma inadecuada a la Sra. Brunilda Mercado en la sala de emergencias el día 13 de julio de 2019. Conforme se discutirá en la presente demanda, el Dr. López atendió de forma inadecuada a la Sra. Mercado y se desvío de la mejor práctica de la profesión médica. El Dr. López le es responsable a la

---

[4] Apéndice del *Recurso de Apelación*, págs. 64-66.
[5] Entre estos trámites, se dieron por desistidas las reclamaciones contra el Dr. Luis R. Canetti Mirabal, el Plan de Salud Menonita, Inc., y el SIMED, y se dictaron varias sentencias parciales decretando su archivo con perjuicio. Véase, las entradas núm. 22, 45, 47, 59 y 61 del expediente digital del Caso Núm. CG2020CV01433 en el SUMAC.
[6] Apéndice del *Recurso de Apelación*, págs. 47-56. El 28 de febrero de 2023, la parte apelante presentó nuevamente una *Demanda Enmendada* con el fin de incluir como parte demandada a Pediatric Professionals CSP, compañía que manejaba la sala de emergencias del Hospital Menonita de Caguas. Véase, la entrada núm. 81 del expediente digital del Caso Núm. CG2020CV01433 en el SUMAC.

parte demandante por todos los daños sufridos, de manera solidaria, conjuntamente con todos los demás codemandados. Se ha denominado a la esposa del Dr. López como Fulana de Tal por desconocerse su verdadero nombre y/o existencia. Una vez se conozca su verdadero nombre se hará la sustitución de rigor. […]."[7]

Además, en esta demanda enmendada se incluyeron las alegaciones siguientes:

"4. En la Sala de Emergencias del Hospital Menonita de Caguas, el Dr. Edwin B. López Robles, atendió a la Sra. Brunilda Mercado. Éste atendió a la Sra. Brunilda Mercado y conoció del estado en que se encontraba el dedo grande del pie izquierdo de la Sra. Mercado. Dicho dedo estaba cianótico, eritematoso, sensible y con secreciones fétidas.

5. No obstante, ante las condiciones claramente críticas del estado del dedo del pie de la Sra. Mercado, el Dr. López Robles permitió el alta médica de ésta."[8]

El 28 de febrero de 2023, la parte apelante presentó una segunda *Demanda Enmendada* con el fin de incluir como parte demandada a Pediatric Professionalss CSP, compañía que manejaba la sala de emergencias del Hospital Menonita de Caguas.[9]

El 8 de marzo de 2023, el Hospital Menonita de Caguas presentó *Contestación a Demanda Enmendada.*[10]

Luego de varios otros trámites procesales, el 28 de marzo de 2023, el Dr. López Robles presentó una *Moción de Desestimación.*[11] En síntesis, el Dr. López Robles solicitó la desestimación de la demanda a su favor al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), alegando que la reclamación en su contra estaba prescrita.

El 5 de mayo de 2023, la parte apelante presentó su *Oposición a Moción de Desestimación.*[12] En esta, se opuso a la solicitud del Dr.

---

[7] Apéndice del *Recurso de Apelación*, págs. 48-49.
[8] Apéndice del *Recurso de Apelación*, pág. 53.
[9] Véase, la entrada núm. 81 del expediente digital del Caso Núm. CG2020CV01433 en el SUMAC.
[10] Véase, la entrada núm. 87 del expediente digital del Caso Núm. CG2020CV01433 en el SUMAC.
[11] Apéndice del *Recurso de Apelación*, págs. 29-44.
[12] Apéndice del *Recurso de Apelación*, págs. 20-28.

López Robles alegando que el Hospital Menonita de Caguas respondía vicariamente por las actuaciones negligentes del Dr. López Robles; y que la interrupción de la prescripción en cuanto a dicho hospital aprovechó por igual a este doctor, pues entre estas partes existía una relación de solidaridad propia.

Además, la parte apelante alegó que mediante el descubrimiento de prueba que advino en conocimiento de que la compañía Pediatric Professionalss CSP manejaba la sala de emergencias del Hospital Menonita de Caguas y no el propio hospital; y de que el Dr. López Robles había sido uno de los causantes del daño, razón por la cual estas partes no fueron incluidas como partes demandadas en la demanda original.

El 15 de mayo de 2023, Pediatric Professionalss CSP presentó su *Contestación a Demanda Enmendada*.[13]

El 10 de agosto de 2023, se celebró una *Vista Argumentativa*, en la cual las partes tuvieron la oportunidad de argumentar a favor de sus respectivas posiciones con respecto a la solicitud de desestimación presentada por el Dr. López Robles.[14]

Finalmente, el 25 de agosto de 2023, notificada el 28 de agosto de 2023, el TPI dictó la *Sentencia Parcial* apelada, mediante la cual declaró Ha Lugar la *Moción de Desestimación* presentada por el Dr. López Robles y, en consecuencia, se desestimó la demanda, con perjuicio, en cuanto a este codemandado.[15] En su dictamen, el TPI concluyó que el término prescriptivo para presentar una reclamación contra el Dr. López Robles comenzó a transcurrir el 12 de julio de 2019, fecha en que este atendió a la Sra. Brunilda Mercado Santana en la sala de emergencia del Hospital Menonita de Caguas. Al respecto, dicho foro expresó, entre otras cosas, que:

---

[13] Véase, la entrada núm. 107 del expediente digital del Caso Núm. CG2020CV01433 en el SUMAC.

[14] Véase, la entrada núm. 112 del expediente digital del Caso Núm. CG2020CV01433 en el SUMAC.

[15] Apéndice del *Recurso de Apelación*, págs. 10-19.

"[d]esde dicha fecha, los demandantes conocían el doctor que atendió a la señora Mercado y hasta obtuvieron una receta de varios medicamentos que éste le emitió"; "[d]esde dicho momento conocían que la cadena de eventos en el hospital que culminó con la amputación de parte del pie de la señora Mercado comenzó a partir de la primera visita; "[m]as aún, los demandantes obtuvieron copia de los récords médicos los cuales fueron examinados por su perito Dr. José R. Ortiz Feliciano"; y "no era creíble el planteamiento de los demandantes en cuanto a que fue el 16 de noviembre de 2022, cuando advinieron en conocimiento de la existencia del Dr. López en este panorama."[16]

El TPI concluyó, además, que, "[c]onforme a la norma establecida en [*Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012)], es norma claramente establecida que la presentación de la demanda en contra del Hospital Menonita de Caguas y demás codemandados no paralizó el término prescriptivo en contra del Dr. López."[17] Finalmente, resolvió que el término para presentar una acción contra el Dr. López Robles había prescrito.

El 12 de septiembre de 2023, la parte apelante presentó una *Reconsideración*, la cual fue declarada No Ha Lugar por el TPI mediante la *Orden* emitida y notificada el 13 de septiembre de 2023.[18]

En desacuerdo con la determinación del TPI, la parte apelante acudió ante nos el 13 de octubre de 2023 mediante el presente recurso de *Apelación*. En este, la parte apelante señala como único error lo siguiente:

> **Erró el Tribunal de Primera Instancia al entender que la acción legal contra el Dr. Edwin López estaba prescrita.**

El 14 de noviembre de 2023, el Dr. Edwin López Robles presentó su *Alegato de la Parte Apelada*.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[16] Apéndice del *Recurso de Apelación*, pág. 18.
[17] *Íd.*
[18] Apéndice del *Recurso de Apelación*, págs. 1-9.

**II**

**A.**

El Artículo 1803 del Código Civil, 31 LPRA ant. sec. 31 LPRA sec. 5142,[19] recoge el principio de responsabilidad vicaria por virtud del cual, entre otros supuestos, un patrono podría ser responsabilizado extracontractualmente por los actos negligentes cometidos por alguno de sus empleados. En lo pertinente, el Artículo 1803 del Código Civil, *supra*, dispone lo siguiente:

> "La obligación que impone [el Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.
>
> [...]
>
> Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.
>
> [...]
>
> La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

El precitado artículo constituye una excepción especial al principio de la responsabilidad personal por los actos propios y solo puede aplicarse a los casos incluidos específicamente en el mismo. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022). De igual forma, establece una presunción legal de responsabilidad de las personas citadas en él. En atención a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que le es imputable la causa de aquel por su propia culpa o negligencia. *Íd.*

---

[19] El "Código Civil de Puerto Rico" de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como "Código Civil de Puerto Rico" de 2020, 31 LPRA sec. 5311 *et seq.* Los hechos que originan la presente controversia tomaron lugar durante la vigencia del Código Civil de 1930, por lo cual esta es la ley que aplica al caso.

La causa de acción establecida por Artículo 1803 del Código Civil, *supra*, consiste fundamentalmente en la culpa *in vigilando, in instruendo o in eligiendo* atribuible a las personas designadas estatutariamente como responsables. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 907 (2012). Se establece, pues, una presunción de culpa que puede consistir en una falta de vigilancia (culpa *in vigilando*), en una falta de instrucción (culpa *in instruendo*) o en una desacertada elección (culpa *in eligiendo*). *Íd.* Es decir, que, de haber sido el patrono diligente en vigilar, instruir o escoger a sus empleados, el daño no hubiese ocurrido. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra. Para activar esta presunción de culpa del patrono, un demandante debe establecer *prima facie*: (1) una relación de dependencia entre el patrono y el empleado, (2) que el empleado actuó en el desempeño de los ramos de su oficio con el propósito de servir y proteger los intereses del patrono, y que (3) el empleado tuvo culpa en el desempeño de esas funciones. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 983 (2021). El patrono puede liberarse de esta responsabilidad si demuestra que empleó toda la diligencia de un buen padre de familia. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

En lo pertinente al caso ante nuestra consideración, al amparo del Artículo 1803 del Código Civil, *supra*, los hospitales pueden ser responsables frente a un perjudicado por la falta de pericia atribuible al personal del hospital en el ámbito de sus funciones. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra; *Márquez Vega v. Martínez Rosado*, 116 DPR 397, 404-405 (1985).

Se reconoce que las instituciones hospitalarias tienen el deber de ejercer el cuidado y las medidas previsoras que una persona razonablemente prudente desplegaría ante determinadas situaciones, utilizando como criterio la buena práctica generalmente reconocida por la profesión. *Cruz Flores et al. v. Hosp. Ryder et al.*,

supra, pág. 487-488. Su responsabilidad no es absoluta, pues no tienen la obligación de prever todo peligro imaginable. *Íd.* Se limita a aquellos riesgos que con algún grado de probabilidad serían anticipables para una persona prudente y razonable. *Íd.*

Al momento de adjudicar responsabilidad vicaria a los hospitales por los actos de los médicos que laboran en su institución, es importante considerar la relación jurídica existente entre estos. *Íd.*; *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 288 (2012). El hospital responde vicariamente por los actos de aquellos médicos que son sus empleados; por aquellos médicos, que, aunque no forman parte de su fuerza laboral, son parte de la facultad o *staff*, encontrándose disponibles para consultas de otros médicos; **por los médicos pertenecientes a concesionarios de franquicias exclusivas para prestar servicios en el hospital;** y por aquellos médicos que sin ser empleados gozan de privilegios en la institución. *Íd.*; *Márquez Vega v. Martínez Rosado*, supra; *Núñez v. Cintrón*, 115 DPR 598 (1984); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 515-16 (2009).

**B.**

La prescripción extintiva constituye una institución propia del derecho civil en materia sustantiva, la cual está intrínsecamente atada al ejercicio del derecho que se pretende vindicar. *Campos v. Cía. Fom. Ind.*, 153 DPR 137, 143 (2001); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 DPR 740, 742 (1981). Es una forma de extinción de un derecho, por la inercia de una parte en ejercer el mismo dentro del término prescrito por ley. *Maldonado Rivera v. Suárez y otros*, 195 DPR 182 (2016); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra; *S.L.G. Serrano-Báez v. Foot Loker*, 182 DPR 824, 831 (2011). Esta figura tiene como objetivo impedir la incertidumbre de las relaciones jurídicas y sancionar la inacción del ejercicio de los derechos. *Orraca*

*López v. ELA,* 192 DPR 31, 49 (2014); *COSSEC et al. v. González López et al.,* 179 DPR 793 (2010).

Cónsono con lo anterior, el Artículo 1868 del Código Civil, 31 LPRA ant. sec. 5298, dispone que las acciones de daños y perjuicios por culpa o negligencia a las que se refiere el Artículo 1802 del Código Civil, *supra,* tienen un término de prescripción de un (1) año. *Col. Mayor Tecn. v. Rodríguez Fernández,* 194 DPR 635, 644 (2016); *Toro Rivera v. ELA,* 194 DPR 393, 415 (2015); *Fraguada Bonilla v. Hosp. Aux. Mutuo,* supra. El punto de partida de dicho término es la fecha en que el agraviado conoció o debió haber conocido que sufrió un daño, quién lo ocasionó, así como los elementos necesarios para poder ejercitar su causa de acción. *Toro Rivera v. ELA,* supra; *Fraguada Bonilla v. Hosp. Aux. Mutuo,* supra. En nuestro ordenamiento jurídico esta doctrina se conoce como la teoría cognoscitiva del daño. *COSSEC et al. v. González López et al.,* supra; *García Pérez v. Corp. Serv. Mujer,* 174 DPR 138 (2008); *Vera v. Dr. Bravo,* 161 DPR 308 (2004).

Una vez iniciado el término prescriptivo, corresponde a la parte agraviada expresar su voluntad de conservar su derecho a ser indemnizado. Nuestro ordenamiento reconoce tres maneras de manifestar la voluntad de conservar un derecho y que interrumpen efectivamente la prescripción extintiva, a saber: (1) el ejercicio de un derecho ante un foro judicial; (2) la reclamación extrajudicial de parte del titular de un derecho dirigida al deudor, y (3) el reconocimiento de una deuda por parte del deudor. Artículo 1873 del Código Civil, 31 LPRA sec. 5303. Una vez se interrumpe oportunamente la prescripción, el término prescriptivo comienza a transcurrir nuevamente. *SLG García-Villega v. ELA et al.,* 190 DPR 799, 816 (2014).

En materia de prescripción de la causa de acción bajo el Artículo 1802 del Código Civil, *supra,* en *Fraguada Bonilla v. Hosp.*

*Aux. Mutuo*, supra, se adoptó la figura de la solidaridad impropia (o *in solidum*) cuando coincide más de un causante de un daño. Conforme a esta figura, si el perjudicado interesa conservar su causa de acción contra cada uno de los causantes del daño, deberá interrumpir la prescripción en relación con cada uno por separado y dentro del término prescriptivo de un (1) año establecido por el Artículo 1868 del Código Civil, *supra.* Véase, además, *Maldonado Rivera v. Suárez y otros,* supra.

Cónsono, y en lo pertinente al caso ante nuestra consideración, se ha resuelto que la solidaridad impropia, **no se extiende al régimen de responsabilidad presunta establecido en el Artículo 1803 del Código Civil, *supra.*** Al respecto, recientemente en *Pérez et al. v. Lares Medical et al.*, supra, pág. 989-890, se estableció que "la responsabilidad que surja entre el patrono y el empleado es una solidaria, más en su vertiente propia", **por lo que "los actos interruptivos del término prescriptivo realizados contra el patrono o el empleado perjudican al otro por igual."**

**III**

En su *Recurso de Apelación*, la parte apelante señala que el erró el TPI "al entender que la acción legal contra el Dr. Edwin López estaba prescrita". En síntesis, alega que el Hospital Menonita de Caguas respondía vicariamente por las actuaciones negligentes del Dr. López Robles; y que la interrupción de la prescripción en cuanto a dicho hospital aprovechó por igual a este doctor, pues entre estas partes existía una relación de solidaridad propia. Además, alega que fue mediante el descubrimiento de prueba que advino en conocimiento de que la compañía Pediatric Professionalss CSP manejaba la sala de emergencias del Hospital Menonita de Caguas y no el propio hospital; y de que el Dr. López Robles había sido uno de los coausantes del daño, razón por la cual estas partes no fueron incluidas como partes demandadas en la demanda original.

En oposición, el Dr. López Robles sostiene la corrección de la determinación del dictamen apelado alegando que no era empleado del Hospital Menonita ni de Pediatric Professionalss CSP, por lo que no tiene méritos lo planteado por la parte apelante.

Según reseñamos, en la *Sentencia Parcial* apelada, el TPI resolvió que la reclamación contra el Dr. López Robles estaba prescrita. A su juicio, la parte apelante debió reclamarle individualmente al doctor como alegado cocausante solidario dentro del término prescriptivo de un año dispuesto en el Artículo 1868 de nuestro Código Civil, *supra.* Sin embargo, la controversia ante su consideración exigía —*como parte integral del análisis—*, considerar la relación jurídica que existía entre el Hospital Menonita de Caguas y el Dr. López Robles.

Según expusimos, bajo el Artículo 1803 del Código Civil, *supra,* el hospital responde vicariamente por los actos de aquellos médicos que son sus empleados; por aquellos médicos, que, aunque no forman parte de su fuerza laboral, son parte de la facultad o *staff*, encontrándose disponibles para consultas de otros médicos; **y por los médicos pertenecientes a concesionarios de franquicias exclusivas para prestar servicios en el hospital, como lo son los proveedores de servicios de sala de emergencia**. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 487-488.

Según las alegaciones presentadas en la demanda, la Sra. Brunilda Mercado Santana acudió directamente a la sala de emergencias del Hospital Menonita de Caguas en busca de asistencia médica y allí se le asignaron médicos que laboraban en dicha institución para que la atendieran dentro de sus facilidades. Entre estos, se le asignó al Dr. López Robles, quien pertenece a un concesionario proveedor de servicios de sala de emergencia.

Entendemos que existe una presunción de que el Hospital Menonita de Caguas responde vicariamente por los alegados actos

de mala práctica profesional del Dr. López Robles. Por consiguiente, también rigen los efectos de la solidaridad propia. Es decir, la interrupción de la prescripción aprovecha o perjudica por igual a ambos.

En lo pertinente a la controversia ante nuestra consideración, la interrupción del término prescriptivo en cuanto al Hospital Menonita de Caguas perjudicó al Dr. López Robles por igual, pues entre ambas partes existe una relación de solidaridad propia. Por lo tanto, a nuestro juicio, el TPI erró al desestimar la reclamación contra el Dr. López Robles por prescripción.

**IV**

Por los fundamentos expuestos, se revoca la *Sentencia Parcial* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones